### CONRAD INV. CO. v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. May 25, 1908.)

No. 1,530.

1. **INDIANS—INDIAN LANDS—RESERVATION—APPROPRIATION OF WATERS—INDIAN TREATY.**

Indian Treaty May 1, 1888, c. 213, 25 Stat. 124, establishing the Blackfeet Indian reservation, with the middle of the channel of Birch creek for its southern and southeastern boundary, which treaty was intended to promote the improvement, comfort, and welfare of the Indians, by aiding them to become self-supporting as an agricultural people, impliedly reserved to the Indians a prior right to a portion of the waters of such creek with which to irrigate the arid lands in the reservation, which right was paramount to that of persons subsequently taking up desert land claims on the public domain adjacent to the creek.

2. **WATERS AND WATER COURSES—RESERVATION BY UNITED STATES.**

The general government has power to reserve the waters on the public domain and exempt them from appropriation under state laws.

3. **SAME—IRRIGATION—RIGHTS OF APPROPRIATORS—DIVISION.**

Where the Indians on the Blackfeet reservation had a prior right to the use of the waters of Birch creek for irrigation to that of defendant, which had acquired by appropriation and purchase large quantities of land adjacent to the creek, which it had proceeded to irrigate by means of canals and a dam in the creek, a decree restraining defendant from obstructing the waters of the creek to the extent of 1,666⅔ inches from flowing down the channel to points of diversion for the benefit of the Indians on the reservation, and providing that the amount of water in excess of that specified in the decree should be subject to the subsequent order of the court, was proper.

4. **SAME—PARTIES.**

In trespass by the United States for the benefit of the residents of the Blackfeet Indian reservation for the taking of the waters of Birch creek to the prejudice of the Indians, settlers who had taken up land on the faith of contracts with defendant to furnish them water, and whose rights were derived solely from defendant, were not necessary parties.

5. **APPEAL AND ERROR—REVIEW—COSTS.**

If an appeal is taken from a decree on the merits, it will not be reversed on a question of costs.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, § 4549.]

Appeal from the Circuit Court of the United States for the District of Montana.

For opinion below, see 156 Fed. 123.

Walsh & Nolan and George H. Stanton (T. J. Walsh, of counsel), for appellant.

Carl Rasch, U. S. Atty.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge. This is an appeal from a decree entered in the United States Circuit Court for the District of Montana enjoining the defendant from obstructing the flow of a stream of water to the extent of interfering with the rights of the Indians on the Blackfeet Indian reservation. The controversy relates to the right to the flow of water in Birch creek, an unnavigable stream whose middle line forms the southern and southeastern boundary of a tract of land in the county of Teton, in the state and district of Montana, reserved by the United States government for the permanent home and abiding place of certain tribes of Indians, under the name of the Blackfeet Indian reservation.

It is alleged by the complainant, and admitted by defendant, that large portions of the lands embraced within said reservation are well adapted for stock raising, and other large portions are susceptible of cultivation; that large herds of cattle and large numbers of horses, the property of the government and of the Indians, have been and are now "pasturing and grazing upon said reservation and upon the lands within said reservation, being and situate along and bordering upon said Birch creek"; that in order to make the lands productive beyond the growth of natural grass irrigation is necessary; that the defendant, a Montana corporation, in the year 1900 constructed a dam in the channel of said Birch creek for the purpose of diverting certain waters of said creek into a canal constructed by defendant, and through said canal into ditches and reservoirs connected therewith; that defendant has used and still continues to use said canal, ditches, and reservoirs for such purpose. It appears that defendant's dam was reconstructed in 1904; that since such reconstruction—excepting in times of extreme high water, extending over not more than two or three weeks of the entire year—the dam is capable of turning all the waters of Birch creek, beyond a small amount of seepage, into defendant's canal; and that the creek below defendant's dam was practically dry at certain points during at least a portion of each of the summers of 1904 and 1905, which seems to have been a condition before unknown.

In Winters v. United States, 143 Fed. 740, 74 C. C. A. 666, and 148 Fed. 684, 78 C. C. A. 546, the controversy involved the right of the United States and of the Indians residing upon the Belknap Indian reservation to the use of 5,000 inches of the waters of Milk river for useful and beneficial purposes. The Indian reservation was established by the treaty between the United States and the Indians, under Act Cong. May 1, 1888, c. 213, 25 Stat. 113–133. The center of Milk river is the northern boundary line of the reservation throughout its entire width, and is the principal source of supply of water for the various uses of the government and the Indians for irrigation purposes generally upon the reservation. The water is diverted from the

river and distributed over the lands of the reservation by means of a canal and lateral ditches. The defendants in that case were settlers upon the public lands of the United States in the vicinity of Milk river, who had constructed a dam across the channel of Milk river above the reservation, and had appropriated and diverted the waters of Milk river at that point for the purpose of irrigating their lands, which they claimed the right to do under the desert land laws of the United States and the laws of the state of Montana authorizing the appropriation of the waters of the streams of that state for household, domestic, agricultural, irrigating, and other purposes. The action was brought by the United States to perpetually restrain the defendants from in any manner taking or diverting the waters of Milk river, and from in any manner impeding, obstructing, or preventing the waters of Milk river and its tributaries, to the amount of 5,000 inches, from flowing down the channel of the river to the point of diversion upon the reservation. A decree was entered in the Circuit Court for the District of Montana in favor of the complainant, and the defendants appealed. This court affirmed the decree, holding that the United States, by treaties with the Indians on the reservation, had impliedly reserved the waters of Milk river for the benefit of the Indians on the reservation to the extent reasonably necessary to enable them to irrigate their lands, and that grantees and settlers on public lands outside of the reservation could not acquire, under the desert land laws of the United States or the laws of the state of Montana relating to the appropriation of the waters of the streams of that state, the right to divert the waters of Milk river to the prejudice of the rights of the Indians residing upon that reservation. This decision has been affirmed by the Supreme Court of the United States in Winters v. United States, 207 U. S. 564, 28 Sup. Ct. 207, 52 L. Ed. ——. In the course of the decision, on page 577 of 207 U. S., page 212 of 28 Sup. Ct. (52 L. Ed. ——), the court said:

"The power of the government to reserve the waters and exempt them from appropriation under the state laws is not denied and could not be. United States v. Rio Grande Ditch & Irrigation Co., 174 U. S. 690, 702, 19 Sup. Ct. 770, 43 L. Ed. 1136; United States v. Winans, 198 U. S. 371, 25 Sup. Ct. 662, 49 L. Ed. 1089. That the government did reserve them we have decided, and for a use which would be necessarily continued through years."

The present case is in many respects similar to the Winters Case. The act of Congress of May 1, 1888, which ratified an agreement with certain Indians and established the Ft. Belknap Indian reservation, with the middle of the main channel of Milk river for its northern boundary, established also the Blackfeet Indian reservation, with the middle of the channel of Birch creek for its southern and southeastern boundary, and in this case the diversion of the waters of Birch creek by means of a dam is the subject of controversy, as the diversion of the waters of Milk river by means of a dam was the subject of controversy in the Winters Case. The law of that case is applicable to the present case, and determines the paramount right of the Indians of the Blackfeet Indian reservation to the use of the waters of Birch creek to the extent reasonably necessary for the purposes of irrigation and stock raising, and domestic and other useful purposes. The gov-

ernment has undertaken, by agreement with the Indians on these reservations, to promote their improvement, comfort, and welfare, by aiding them to become self-supporting as a peaceable and agricultural people. The lands within these reservations are dry and arid, and require the diversion of waters from the streams to make them productive and suitable for agricultural, stock raising, and domestic purposes. What amount of water will be required for these purposes may not be determined with absolute accuracy at this time; but the policy of the government to reserve whatever water of Birch creek may be reasonably necessary, not only for present uses, but for future requirements, is clearly within the terms of the treaties as construed by the Supreme Court in the Winters Case.

In the bill of complaint in this case it is alleged that:

"In the year 1898 your orator and the Indians residing upon said reservation, for the purpose of bringing water to and upon the lands of said Blackfeet Indian reservation, with which to irrigate the same, and raise thereon crops of grass, grain, and vegetables, appropriated, took, and diverted from the channel of said Birch creek, by means of canals, ditches, and waterways, large amounts, to wit, a flow of 2,000 cubic feet per minute, of the waters of said Birch creek, and by means of canals, ditches, and waterways conducted the waters of said creek, so taken and diverted from said Birch creek as aforesaid, from the channel of said creek to and upon divers and extensive tracts of lands upon said reservation, aggregating in amount about 10,000 acres of land, and after so conducting said waters to and upon said lands used the same for the irrigation of said lands, and for domestic and other useful purposes, and by means thereof raised upon said lands crops of grain, grass, and vegetables."

It is further alleged that, notwithstanding the rights of the complainant and of the Indians to the uninterrupted flow of all the waters of Birch creek down the natural channel of said creek, the defendant in the year 1900 wrongfully and unlawfully, and without the license, consent, or approval of the complainant or of the Indians residing upon the Blackfeet Indian reservation, entered upon said reservation and the said Birch creek above the points of the diversion of said waters of said creek by the complainant and the said Indians as aforesaid, and above the places of the use of said waters by the complainant and the Indians, and built and erected and constructed upon said reservation, and in and across the channel of said Birch creek, a large and substantial dam and reservoir, and by means of said dam and reservoir obstructed and prevented the waters of said Birch creek from flowing down the natural channel of said creek to the places of diversion and use of said waters of said creek by complainant and the said Indians.

The evidence on the part of the complainant in support of these allegations is to the effect that the Blackfeet Indian reservation covers a territory in the county of Teton, in the northwestern part of the state of Montana, about 40 miles east and west by 60 miles north and south, and containing about 900,000 acres. Portions of this land are suitable for grazing purposes, while other portions are adapted for agricultural purposes. The land is arid, and, where cultivated, requires water for irrigation. Birch creek, which forms the southern and southeastern boundary of the reservation, has carried at its lowest stage 2,500 inches of water, and at its highest stage 150,000 inches of water. In the reservation and north of Birch creek is a stream, called

Blacktail creek, which flows in the same general direction as Birch creek, and finally empties into that creek. Between Birch creek and Blacktail creek, and still north of Blacktail creek, there is a tract of land containing about 20,000 acres, 50 per cent. of which, or 10,000 acres, can be irrigated from Birch creek. In 1898 the government constructed a canal, about 5½ miles long, from Birch creek onto the lands in the reservation adjoining the creek. This canal had, when constructed, a capacity of 1,200 cubic feet of water per minute, or the equivalent of about 1,000 inches. Six lateral ditches have been extended from this canal. In addition to the canal and its lateral ditches, there are four other ditches taking water from the creek onto the lands of the reservation. These four ditches have an aggregate capacity for carrying and distributing 1,740 inches of water.

Defendant, in its answer, admits the construction of a dam across the channel of Birch creek, as alleged in the complaint. The evidence on the part of the complainant was in substance to the effect that the water of Birch creek allowed to escape over this dam was not sufficient to be depended upon for any kind of a practical use of the government ditch; that much of the time during the summers of 1904 and 1905 there was practically no water running in Birch creek at the head of the government ditch; that even the springs which had theretofore assisted in feeding the stream had diminished or disappeared, showing that they were fed by underflow of the stream from above and that their source had been cut off; that the government had theretofore attained a certain amount of success in accomplishing its purpose in establishing the reservation, to get its Indian wards interested in agricultural pursuits, but that since the building of defendant's dam had cut off the former abundant supply of water the Indians, who had begun to take some interest in agricultural pursuits, had become discouraged; that the climate was such as to make some extra winter care and feeding necessary for anything like success in the handling of live stock; that without irrigation it was impossible to raise grain or a crop of grass heavy enough to cut for winter feeding, which condition had compelled the Indians to dispose of their stock, which had theretofore been summered on the government's fenced inclosure and wintered by the Indian owners on their several allotments of land on the unfenced strip along Birch creek; and that for that reason the Indian population on this strip had decreased in numbers and those remaining had made no substantial progress. The testimony on the part of the defendant is that the ditches on the reservation are out of repair and do not carry any such amount of water as claimed by the complainant, and that 400 inches of water is sufficient for all purposes on that part of the reservation where the water of Birch creek can be distributed and used; that the defendant has constructed a canal on the south side of Birch creek, with a carrying capacity of 20,000 inches, and that defendant has appropriated that amount of the water of Birch creek; that when the enterprise was inaugurated the defendant owned 11,000 acres of land which it proposed to irrigate with the waters flowing through its canal; that its holdings of land have steadily increased by purchases from the government and from individuals, who have acquired title by homestead,

pre-emption, and desert land entries, until at the time of the hearing in this case it owned about 44,000 acres of land capable of irrigation from its canal; that the value of the property of the defendant employed in its system of irrigation was about $500,000.

Conceding that the defendant's enterprise is all that it claims, it is still subject to the rights of the Indians on the reservation in the diversion of the waters of Birch creek, and the question remains to be determined: What, under all the circumstances, is the government entitled to reserve for their uses? The court below in its decree does not direct the removal of defendant's dam from the channel of Birch creek, but has enjoined the defendant from in any manner or by any means impeding, preventing, or obstructing the waters of said creek to the amount and extent of 1,666⅔ inches, or the equivalent of 33⅓ second feet, from flowing down the natural channel of said creek and the points of diversion and places of use established by the complainant for the benefit of the Indians on the reservation. This decree does not at any time reserve all the waters of Birch creek for the complainant, but leaves a considerable flow of water to be retained by defendant's dam and used in its system of irrigation; and, after a careful examination of the evidence, we are of opinion that the decree of the Circuit Court is entirely reasonable and just, and should be affirmed in this respect.

It is objected that certain parties mentioned in defendant's amended answer were necessary parties to the action, and that without them there was a defect of parties. The amended answer, referring to lands on the south and southeast of Birch creek under defendant's irrigation system, alleges that settlers in large numbers settled upon the said lands and entered into agreements with the defendant, whereby the defendant undertook to furnish such settlers with water sufficient to irrigate the lands settled upon by them, and they reciprocally agreed to take and pay for such water; that a great number of the said settlers entered the lands settled upon by them under the provisions of the desert land act, and made proof of their settlement upon and reclamation of the same; that a large number of the settlers, with a view of obtaining patents under the desert land act, set forth in their proofs that they had obtained the right, as the fact was, to obtain water from the said canal and ditches of the defendant; that such proofs were approved by the local land office, the Commissioner of the General Land Office, and the Secretary of the Interior; that the right of such settlers to have and take water from the said ditches for the irrigation of their lands became by contract for the same appurtenant to said lands and inseparably annexed thereto. This is an action of trespass, where the acts of the defendant constitute the cause of action. The rights of the parties, referred to in the amended answer, to the water of Birch creek, were derived from the defendant and remain subject to its rights. They are not separate and distinct rights, and in the nature of the case could not be. The parties who purchase water from the defendants do not divert the water from Birch creek, and have acquired no right of diversion independent of the defendant's right. It follows that in any controversy respecting such right upon the facts in this case the defendant represents the entire claim of right.

It is further objected that the decree of the Circuit Court provides that, whenever the needs and requirements of the complainant for the use of the waters of Birch creek for irrigating and other useful purposes upon the reservation exceed the amount of water reserved by the decree for that purpose, the complainant may apply to the court for a modification of the decree. This is entirely in accord with complainant's rights as adjudged by the decree. Having determined that the Indians on the reservation have a paramount right to the waters of Birch creek, it follows that the permission given to the defendant to have the excess over the amount of water specified in the decree should be subject to modification, should the conditions on the reservation at any time require such modification.

The award of costs in favor of complainant is not a subject of appeal. If an appeal be taken from a decree upon the merits, it will not be reversed upon the question of costs. Du Bois v. Kirk, 158 U. S. 58, 67, 15 Sup. Ct. 729, 39 L. Ed. 895.

The decree of the Circuit Court is affirmed.