[No. 5731.]

THE BOULDER AND LEFT HAND DITCH COMPANY v. HOOVER, WATER COMMISSIONER, ET AL.

1.  **Water Rights — Abandonment — Who May Assert**—The officials charged by law with the distribution of water for irrigation will not be heard to allege, in a suit instituted to compel obedience to a decree establishing the several priorities in the district, and in which suit they are the sole defendants, that a right decreed has been lost by abandonment. The question can be litigated only between the parties whose rights are directly involved.—(347)

2.  **Irrigation—Duty of Water Commissioner**—It is not within the province or duty of the officials charged with the distribution of water for irrigation to question the decrees establishing the priorities to the use of water in the district, where regular in form, in full force, and unmodified, or to attempt to impeach, nullify, or in any way impair their efficiency. Controversies between the various consumers of water are to be adjusted only in proceedings instituted by those interested therein. The purpose of the owner of a water right to change the place of the application of the water, not changing the point of diversion, affords no ground to the officials to decline to turn off the water according to the decree. To what lands the water shall be applied is a question to be litigated between the consumers affected.—(349)

3.   Mandatory Injunction—Where the Writ Lies—To compel the officers of the irrigation service to distribute the waters of the district according to the decreed priorities of the several consumers.—(349)

*Appeal from Boulder District Court* — Hon. CHRISTIAN A. BENNETT, Judge.

Mr. H. M. MINOR, Mr. MILTON SMITH, and Mr. CHARLES R. BROCK, for appellant.

Mr. A. C. PATTON, and Mr. JAMES W. McCREERY, for appellees.

Mr. JUSTICE BAILEY delivered the opinion of the court:

This action was brought by The Boulder and Left Hand Ditch Company, appellant here, against the water commissioner of water district No. 6, the division engineer of division No. 1, of which water district No. 6 is a part, and the state engineer, appellees here.

The pleadings and evidence show that Boulder creek, in its course through the city of Boulder, crosses Twelfth street, which is carried over the stream by a bridge known as the Twelfth Street Bridge. Just below this bridge is a diverting dam and headgate, through which water is taken from the creek into a common channel of several ditches, usually referred to as the Dry Creek ditches. These several ditches, irrigating by means of laterals out of this common channel, have the same point of diversion, a common headgate, and the same channel for nearly a mile of their course immediately below the point of diversion from Boulder creek, to a point where the Boulder and White Rock ditch branches to the north from the common channel; about one-half mile farther down this channel the D..H. Nichols ditch diverges therefrom to the south and east; about one-half mile east of the diverging point of the

D. H. Nichols ditch, the Nichols North Side lateral, which was the original Dry Creek ditch, runs off to the north; the Wellman, Nichols and Hahn ditch branches off to the south farther down the channel; about three miles below the common headgate, at the Twelfth Street bridge, the common channel divides into the Boulder and Left Hand ditch to the north, and the North Boulder Farmers' ditch to the south.

In the original water adjudication proceedings for irrigation in water district No. 6, in the district court of Boulder county, these various ditches were all decreed independent priorities to the use of water from Boulder creek, and in their respective decrees the court found that the ditches above mentioned had their point of diversion near the Twelfth Street bridge, in the city of Boulder, and there diverted their respective amounts of water through a common headgate. The evidence shows that the original Dry Creek ditch was built by D. H. Nichols, in the early sixties, and that the original channel and diverting works were enlarged, from time to time, upon the construction of other ditches. D. H. Nichols, until the time of his death in 1900, was the sole owner of the original Dry Creek ditch, which was granted a priority in the adjudication proceedings as of June 1, 1862, for ten second cubic feet of water. At the time of his death, Mr. Nichols was also the owner of an undivided interest in the Wellman, Nichols and Hahn ditch, which had been awarded, in the adjudication of 1882, a priority of about ten second cubic feet of water. There is some conflict in the evidence as to the extent of this undivided interest, but that Nichols, at the time of his death, owned some interest in this ditch and its decreed priorities, is fully established.

As early as 1888 the plaintiff company, under agreement with Nichols, made use on its own lands

of a portion of the water owned by Nichols, by virtue of the decrees to these two ditches. The water commissioner always turned into the common headgate at the Twelfth Street bridge the amount of water to which Nichols was entitled, according to these decrees, a portion of which, instead of being diverted into the Nichols ditches, had been allowed to pass on down the common channel and flow into the Boulder and Left Hand ditch, owned by the plaintiff, and used for irrigation on its lands. In 1900 Nichols died. After his death, through mesne conveyances, the plaintiff company acquired the Nichols title to and interest in the original Dry Creek ditch and the Wellman, Nichols and Hahn ditch, and became the owner of the water rights decreed thereto, a portion of which, under the agreement with Nichols above referred to, had been continuously used by it from about 1888. In 1903, Moses Hoover, who was then water commissioner of water district No. 6, refused to turn in through the common headgate the respective amounts of water to which the original Dry Creek ditch and the Wellman, Nichols and Hahn ditch were entitled, according to their decrees, although formal demand in writing was made upon him to do so by plaintiff. The company thereupon appealed from the decision of the water commissioner to the division engineer, and in turn from the decision of the division engineer to the state engineer, both of whom sustained the refusal of the water commissioner. This action was then brought for a mandatory writ of injunction, commanding the water commissioner to turn into the Dry Creek and the Wellman, Nichols and Hahn ditches, at their common headgate, the amounts of water to which they were respectively entitled, according to their decrees, and for other relief.

The North Boulder Farmers' Ditch Company, a

user of water by a lateral from the common channel, as above shown, filed a petition of intervention in the case and introduced some testimony, but at the close of the trial voluntarily dismissed its petition, so that the case is one solely between the plaintiff company and the officers, charged, in their official capacity, with the distribution of water for irrigation purposes. The defendants put in issue the allegations of the complaint, denying ownership in plaintiff of the Nichols water rights, and also specially plead abandonment.

Upon final hearing, the trial judge dismissed the case, on the theory that a question of the change of point of diversion of the waters decreed to the Dry Creek ditch and the Wellman, Nichols and Hahn ditch was involved, and that no decree changing the point of diversion could properly be rendered in this action, but that an application should be made under the statute, which expressly provides for such proceedings, to which all persons in interest must be made parties and have notice. To review the judgment of dismissal the plaintiff brings the case here on appeal.

The question of abandonment is one which, on objection, may not be determined in these proceedings. The impropriety of irrigation officers, seeking to have a matter, in which they have no personal or private right, determined, in an action in which they, in an official capacity only, are defendants, is manifest. That question must be litigated in a suit between parties whose rights are directly involved. This suit is by the owner of a water right against officials, charged with the duty of the distribution of water, under decreed rights, between the several users thereof, within their jurisdiction, to compel action accordingly. It is neither their duty nor privilege to question the decrees, where regular in

form, in full force and unmodified, or to attempt to impeach or nullify them, or in any way impair their efficiency. While it may be that there is a degree of discretion vested in these officers respecting the discharge of their duties, it never was in contemplation that they should assume the burden of litigating questions of dispute between the several water claimants, with reference to their respective rights under decrees duly rendered and in full force. Primarily their duties are to enforce the decrees of the various claimants to and users of water, from a common source, according to their terms. These officers are not personally concerned in controversies between the various users of water, which may only be adjusted in proper proceedings, brought for that purpose, by those who are the real parties interested in and affected thereby.

The questions are: Were the decrees rendered as claimed by plaintiff, and are they yet in force? Has it succeeded to the rights thereunder, and is it entitled to have the water turned out to satisfy them? Upon the record, as now presented, all these questions must be answered affirmatively. The mandatory writ should have been allowed.

There is not the slightest ground for the contention, or assumption, that it was sought to change the point of diversion of these decreed rights. The point of diversion from the river is the union headgate. It was there the plaintiff demanded to have the water to satisfy these decrees turned out, and the duty of the water commissioner was plain. If plaintiff, when the water is turned out to it, makes an improper use thereof, applying it unlawfully to other land, or otherwise wrongfully uses it, in a way to injure the vested rights of others interested in the same source of supply, then such wrong is subject to correction in a suit by the one damnified. It is clear,

from the evidence, that plaintiff seeks simply to apply the water decreed to the ditches in question in a new place. Whether this may lawfully and properly be done is not for the water commissioner, or his superior officers, acting in a judicial capacity and on their own initiative, to determine, as was in effect attempted when they declined to turn water out to satisfy the decrees in question. Such questions are between the several users of water for irrigation, who are directly affected, and cannot be settled in a suit against irrigation officials only. These executives may, and indeed should, prevent waste and insist upon economical use, but where there is a real and *bona fide* dispute as to the relative rights to the use of water under decrees, between several claimants, these officers are not called upon to inject themselves into the controversy and decide between them. There are no third parties here, and no claim is asserted in behalf of any such, and matters affecting the rights of those not before the court clearly may not be here adjudged. They could not be bound even if such adjudication were undertaken and effected.

We determine, therefore, the single question that, under the pleadings and evidence, it was the duty of the water commissioner to turn out the water to satisfy these decrees, at the union headgate, agreeable to plaintiff's demand, leaving all questions of dispute, if any there be, between the several users of water from the common channel, as to the amount, manner and place of use of this particular water, as to plaintiff's right to use it at all, or any portion of it, and kindred questions, for adjustment in a proper proceeding, between the interested parties.

The judgment is reversed, with directions to the court below to issue the mandatory writ. *Reversed.*

CHIEF JUSTICE STEELE and MR. JUSTICE GABBERT concur.