MARY C. MERRILL, MARGARET M. BROWN, GEORGIA K. MERRILL, ALBERTA A. WEBBER, FLORENCE M. BANNON, JOHN A. GRABOSKI, ARTHUR L. MILLER, H. O. DAVIS, IRA B. CULLERS, as Administrator of the Estate of A. C. CULLERS, Deceased, and BERTHA JONES,

*Plaintiffs and Appellants,*

vs.

L. C. BISHOP, as State Engineer of the State of Wyoming; GUY W. HIGBY, as Water Superintendent for Division Number 3, of the State of Wyoming; P. T. STRAIN, as Water Commissioner at Large for the State of Wyoming, and as Assistant State Engineer of the State of Wyoming; JACK HAYNES, as Water Commissioner of District Number 5, of Division Number 3, of the State of Wyoming,

*Defendants and Respondents.*

(No. 2480; November 6, 1951; 237 Pac. (2d) 186)

For the plaintiffs and appellants the cause was submitted upon the brief of Noble and Cavalli of Thermopolis, Wyoming, and Kenneth R. L. Simmons of Billings, Montana, and oral argument by Mr. Simmons.

For the defendants and respondents the cause was submitted upon the brief of Norman B. Gray, former Attorney General; Marion R. Smyser, former Deputy Attorney General; and Harry A. Thompson, former Assistant Attorney General, all of Cheyenne, Wyoming, and oral argument by H. S. Harnsberger now Attorney General of Cheyenne, Wyoming.

48

## OPINION

BLUME, Justice.

The petition in this case filed on October 18, 1949 alleges and discloses the following facts: The defendant L. C. Bishop is the State Engineer for the State of Wyoming; the defendant Guy W. Higby is the Water Superintendent in Division No. 3 of the state; the defendant P. T. Strain acts as Water Commissioner of the state at Large; the defendant Jack Haynes is the acting Water Commissioner for District No. 5 of Division No. 3. By virtue of a Treaty of July 3, 1868 (15 Stat. 673) a tract of land in the then territory, but now State of Wyoming, was set aside and reserved for the use of the Shoshone Indians as a home and abiding place. This reservation, called the Shoshone or Wind River Indian reservation, commenced at the mouth of Owl Creek, thence running southerly, thence running westerly, thence northerly, to the headwaters of Owl Creek, thence along the middle of the channel of Owl Creek to the point of beginning. (It was west of the town of Thermopolis in this state.) The waters of all streams arising, flowing through, or bordering upon the reservation, as established by the treaty, were as of the date of the treaty reserved and set aside for beneficial use upon all lands of the foregoing reservation susceptible of irrigation. Each acre of land in the reservation acquired a vested right, and has as an appurtenance thereto, the right to a pro rata share of the waters

above mentioned. Plaintiffs are the owners of certain lands in Section 5, Township 8 North, Range 2 East, W.R.M. and Sections 26, 34 and 35 in Township 9 North, Range 2 East, W.R.M. These lands appear to be in close proximity to Owl Creek, a stream constituting the northern and northeastern boundary of the original reservation above mentioned, and are located within the reservation as established in 1868. These lands were formerly Indian allotments in this reservation for which patents had theretofore been issued to various Indians, and which, together with all appurtenances, had been conveyed by the Indian allottees to the predecessors of plaintiffs and had subsequently been conveyed to the plaintiffs herein, who are now the owners thereof. The lands of plaintiffs were and are now susceptible of irrigation by the waters from Owl Creek. Subsequently, by an Act of Congress of March 3, 1905 a treaty between the Indians upon the foregoing reservation and the United States was ratified by the Congress of the United States. By this treaty the lands between Owl Creek and Wind River to the south were ceded and relinquished to the United States, and became a part of the public domain of the United States until granted out and conveyed by the United States to the settlers thereon, and were open to settlement under the Homestead Laws. But excepted therefrom were lands allotted to the Indians in severalty residing upon said reservation, among which lands so allotted to Indians in severalty are the lands of plaintiffs hereinabove mentioned. Article X of the Treaty of 1905 also provided: " 'It is further understood that nothing in this agreement shall be construed to deprive the said Indians of the Shoshone or Wind River Reservation, Wyoming, of any benefits to which they are entitled under existing treaties or agreements not inconsistent with the provisions of this agreement.' " By the establishment of the Wind River Indian Reservation on July

3, 1868 the United States at that time became the trustee of the Shoshone Tribe of Indians holding legal title to all of the lands and waters of the Wind River Reservation and there was as above mentioned then reserved to said Indians and their successors in interest for irrigation and other beneficial uses upon the lands of said reservation, and exempted from appropriation under territorial or state laws or otherwise all of the waters of reservation streams necessary for the successful irrigation of irrigable lands, including all of the waters of Owl Creek in such amounts as are necessary for the successful irrigation of plaintiffs' lands.

Paragraph X of the petition alleges: "That the predecessors in interest and title to plaintiffs, with reasonable diligence, constructed irrigation systems for the diversions of the waters of Owl Creek and its tributaries to be applied to beneficial use upon their lands susceptible of irrigation. That the plaintiffs * * * have under their irrigation systems 809.08 acres of land susceptible of irrigation and now being irrigated which require for the successful irrigation thereof one cubic foot of water per second of time for each seventy acres of irrigable land."

Paragraph XI alleges: "That the rights of the plaintiffs as herein set forth to the use of the waters of Owl Creek and its tributaries are prior and superior to any and all other rights to the use of the waters of Owl Creek and its tributaries."

Paragraph XII alleges: "That during the irrigation season of 1949, defendant, Jack Haynes, Water Commissioner of District No. 5 of Division No. 3, State of Wyoming, acting with defendant P. T. Strain, who claims to be Water Commissioner at Large for the State of Wyoming, and Assistant State Engineer, * * * both claiming to be acting as officers of the State of

Wyoming and under the direction of the defendants L. C. Bishop and Guy W. Higby, did wilfully and without warrant of law, and without prior notice to the plaintiffs herein, close all of the headgates of the irrigation ditches maintained by the plaintiffs on Owl Creek and its tributaries, thus causing the complete natural flow of the said streams to flow down the channel thereof, which said wrongful closing and shutting down of the headgates aforesaid by the above named defendants caused plaintiffs to be deprived of the use of the waters of said stream and caused them great loss and damage." It is further alleged that the defendants have threatened to again shut down the headgates above mentioned unless enjoined, and that plaintiffs have been damaged in the sum of $5000. Plaintiffs accordingly prayed that permanent injunction be issued by the court restraining the defendants from, in any manner, interfering with the headgates of plaintiffs located on the lands herein described and from, in any manner, interfering with or preventing the use by plaintiffs of an amount of water from Owl Creek necessary for the irrigation of their lands on the basis of one cubic foot of water per second of time for each seventy acres and that plaintiffs have such other and further and general relief as may be in accord with equity and good conscience.

Copies of the Treaty of 1868 and the Treaty of 1905 were attached to the petition of the plaintiffs.

None of the defendants in this case answered. L. C. Bishop, the State Engineer of this state, filed a demurrer in this case on the ground that the petition discloses that there is a defect of parties. The court sustained the demurrer, and the plaintiffs not pleading further, judgment was entered dismissing the action without prejudice, and the plaintiffs have appealed to this court.

Counsel for plaintiffs and appellants contend that they are successors in interest of allottees and patentees on the original Indian reservation created in 1868, and that they have an unquestioned right of priority to the waters of Owl Creek as of that date; that this is not an action to adjudicate the priorities of the appropriators of waters from a stream, but an action in tort, of which none but the defendants are guilty, and no other parties need be brought in or are proper parties. Counsel for the respondents, on the other hand, contend that the appropriators of waters from Owl Creek under the laws of this state are interested in and affected by this action and should have been made parties herein. They call our attention to the fact that these waters were adjudicated under the laws of this state and that the fact of this adjudication appears in a document published by authority of the legislature. Hence, they argue that we must take judicial notice of that fact. We may admit that to be true, at least for the purposes of this case. That document shows the names of the appropriators, the date, source, and amount of the appropriation. Pages 84 to 90 of that document show that there are in the neighborhood of 250 parties who are shown to be the appropriators under the laws of this state from Owl Creek and its tributaries. This does not take into consideration the appropriators from Big Horn River, the main stream, who, too, may have some interest in the waters of Owl Creek. The earliest appropriation from Owl Creek and its tributaries is shown by that document as of 1880, so that if plaintiffs have a priority to the waters of Owl Creek and its tributaries as of 1868, the appropriators from the stream under the laws of this state have an inferior right. Notwithstanding that counsel for respondent contend that these parties, though junior in right, are necessary parties herein, and that accordingly the peti-

tion in the case discloses a defect of parties and that the demurrer herein was properly sustained.

The case at bar is somewhat different from any of the decided cases as far as we have found. We have not heretofore been called on to consider the rights of Indians or those of their successors in interest. The issue herein, in view of the demurrer, is rather a limited one. We do not know what contentions will in the future be made by the defendants or the parties interested in the waters of Owl Creek, or what ultimate facts may appear. And we shall not anticipate them herein. So our decision herein is limited strictly to the narrow question before us in view of the demurrer and whatever we may say herein must be construed in that light. We do not accordingly decide herein whether or not plaintiffs actually have any rights in and to the waters of Owl Creek or the extent thereof under contentions and facts which may appear in the future proceedings in this case.

It is agreed by counsel on both sides that in view of the demurrer herein the allegations of the petition must in the case before us be accepted as true. We have before us the Treaties of 1868 and 1905 between the United States and the Indians relating to the Shoshone Indian reservation. Under the Treaty of 1905 all the lands of the reservation from Owl Creek on the north and the Wind River on the south—many miles distant from each other—were ceded by the Indians as part of their reservation established in 1868. The lands of plaintiffs originally allotted to Indians, are located in the portion thus ceded. All rights then existing in individual Indian allottees in the land then ceded were reserved to them. No water rights are mentioned in these treaties. It has, however, been held that these water rights were impliedly reserved for domestic use and for the irrigation for all irrigable lands along the

streams. Winters vs. United States, 207 U. S. 564, 52 L. Ed. 340, 28 S. Ct. 207. And upon conveyance of the lands by Indian allottees, the water rights passed to the grantees as an appurtenance unless the contrary appeared. United States vs. Powers, 9 Cir., 94 Fed. 2d 783, affirmed in 305 U. S. 527, 83 L. Ed. 330, 59 S. Ct. 344; United States vs. Hibner (D.C.) 27 Fed. 2d 909; Anderson vs. Spear-Morgan Livestock Co., 107 Mont. 18, 79 P. 2d 667; Lewis vs. Hanson (Mont.) 227 P. 2d 70. See 42 C.J.S. 732, Note 35.

We shall not, at least in view of the narrow issues herein, question the correctness of these decisions or attempt to distinguish them, but shall accept them as the law applicable in the case now before us. We accept then as true that the right of priority to the waters of Owl Creek and its tributaries of plaintiffs dates from 1868 while the rights of the appropriators of waters from this stream under the laws of this state date at the earliest from 1880. In other words, we shall accept as true in the case before us, that the plaintiffs have a senior and prior right to the waters of this stream. Counsel for defendants argue that the seniority of these rights is of no importance or relevancy herein and that we need only to determine the question of defect of parties. We think, however, as will appear more clearly hereafter, that these two questions are inextricably interwoven and that the question of seniority determines, so far as the case before us is concerned, the question of defect of parties.

We are cited by counsel for respondent to the case of Mitchell Irr. Dist. vs. Whiting, 59 Wyo. 52, 136 P. 2d 502. But that case is clearly distinguishable from the case at bar. It was not an action for a tort, but an action for a mandatory injunction to compel a water commissioner to act as against junior appropriators, when such act, among other reasons, would not benefit the plain-

tiff. We are also cited by counsel for respondents to the case of McLean vs. Farmers' H. L. C. & R. Co., 44 Colo. 184, 98 P. 16 in which it was held that when an injunction was sought against the official distributor of water certain appropriators from the stream should have been made parties to the action of plaintiffs. This case was followed in the case of Terrace Irr. Dist. vs. Neff, 92 Colo. 278, 19 P. 2d 754 also cited by counsel for respondents. In the McLean case the court reasoned as follows: "The law presumes that public officials discharge their duties in conformity with the statutes, and the burden of showing to the contrary rests with him who relies thereon. * * * It appearing, then, from the averments of the complaint that the acts of the defendants of which plaintiffs complain were committed by them for the purpose of supplying ditches with water in district No. 2, the presumption attaches that they ordered the headgates of plaintiffs' ditches to be closed so as to supply *senior* priorities further down the stream. * * * It is doubtless true that water officials must distribute the waters of a district or division according to adjudicated priorities, but when they are avowedly attempting to do so, as is made to appear from the pleadings in this case, their action cannot be interfered with either by interlocutory order or final judgment unless the real parties in interest are parties to the action." (Italics supplied). We have no fault to find with these decisions. But in the case at bar, instead of the water commissioner attempting to close the headgates of plaintiffs so as to supply senior priorities, he closed the headgates so as to supply, under the pleadings herein, junior priorities. And instead of avowedly attempting to distribute the waters according to adjudicated priorities (including the rights under the treaties with the Indians), he closed the headgates of plaintiffs contrary thereto. The presumption of acting legally is overcome by the admission herein that the

plaintiffs have rights which are senior to that of others. So these cases cannot be considered as any authority for respondent in this case.

Our attention is also called by counsel for respondents to Squires vs. Livesey, 36 Col. 302, 85 P. 181. The syllabus in that case is as follows: "In a suit to enjoin a water commissioner from diverting water in a stream from the use of prior appropriators to the use of subsequent appropriators, the subsequent appropriators, being the persons really interested, are necessary parties, and their absence is fatal to the validity of the decree." The case was apparently followed by Humboldt Land & Cattle Co. vs. Allen (D.C.) 14 Fed. 2d 650. See also the case of State ex rel. vs. District Court of Fifth Judicial District, 111 Mont. 520, 111 P. 2d 292. The rule as stated in Squires vs. Livesey supra is repeated in 3 Kinney on Irrigation and Water Rights (2d Ed.) page 2984; and in 2 Wiel on Water Rights (3d Ed.) Section 1196. We shall not attempt to say whether or not the holding in Squires vs. Livesey supra was justified under the facts of that case. In that case the water commissioner acted at the behest of two water appropriators and only four persons had any interest in the controversy aside from the water commissioner and the plaintiff, and it would not have been any particular burden to have made these four persons parties to the action. The ruling may perhaps be justified on the theory that to make these four persons defendants would have obviated the necessity of piecemeal determination of rights. But if the rule as stated in the syllabus of the foregoing case is taken as announcing a general principle or rule, then we think it went too far. Suppose that an appropriator from the waters of Laramie River has an unquestioned adjudicated senior right in the waters of that stream, and the water commissioner in violation thereof shuts down his headgates and prevents him from taking any of the needed water

from that river. Why should such a senior appropriator be compelled in a suit against the water commissioner to make all junior appropriators parties to the action? Suppose that the adjudicated priorities along that stream number 305; suppose further that John Smith has adjudicated priority No. 5; suppose further still that a water commissioner for some unexplained reason shuts off his needed water. Should John Smith be compelled, in order to get any relief against the water commissioner, to make the 300 junior appropriators parties defendants in the case? We think not. That is substantially the situation in the case at bar. It is clear in such case the water commissioner would violate the provisions of Section 71-303, Wyo. Comp. St. 1945 which states: "It shall be the duty of the said water commissioner to divide the water of the natural stream or streams of his district among the several ditches and reservoirs taking water therefrom, according to the prior right of each, respectively." To compel such senior appropriator to make all junior appropriators, of whom there may be hundreds, parties to the action, would be to impose an intolerable burden upon him which would not be justified under the facts so far as they now appear in the case before us. See Chavez vs. Gutierrez, 54 N. M. 76, 213 P. 2d 597, 601. The laws of this state aim at the orderly and peaceable regulation and distribution of the waters in this state. The treaties and laws of the United States are as much a part of the laws of this state as the statutes of this state. So it would seem that public policy demands, speaking generally, in order to carry such peaceful and orderly administration into effect, that when a party has a prima facie senior right to the waters of a stream, he should not, when that right is for any reason disputed, be burdened with a suit against parties who appear to be junior appropriators, of whom there may be a multitude. It is true that it has been said that "a court of

equity delights to do complete justice, and that it constantly aims to settle the rights of all persons interested in the subject-matter, not in piecemeal, but in a single suit." (Washington State Sugar Co. vs. Sheppard, 186 Fed. 233). At the same time, the policy against piecemeal determination of rights should not require an undue burden of him who has an admitted and prima facie senior right. As was properly said by the Supreme Court of Colorado in San Luis Valley Irr. Dist. vs. Carr, 79 Colo. 340, 245 P. 705: "The water commissioner has not or should not have any personal interest. He cannot shift the burden on the other party by failing or refusing to distribute water according to the decrees, which the law requires him to do as a part of his official duty. If he willfully violates the decrees, he is then acting for a private and not the public interest; his acts are unlawful, and equity will not shelter him." See also Boulder & Left Hand Ditch Co. vs. Hoover, 48 Colo. 343, 110 P. 75. And it may not be amiss at this place to state the view of the late Justice Potter in the case of Hamp vs. State, 19 Wyo. 377, 405, 118 P. 653 where he said: "As suggested above, if the defendant had any proper ground to complain of the manner in which or the purpose for which it (the water) was so regulated, he might have applied for relief in the courts through some appropriate proceeding." We think that in this case the water commissioner and the state engineer who directed his acts acted unlawfully, under the pleadings herein, in closing the headgates of plaintiffs and acted in violation of the express provisions of our statutes as above mentioned. It is true, of course, as respondent contends that the duty of water officials to regulate and distribute the waters of this state are mandatory. But that does not mean that it may be done in an illegal manner, and that the determination of water officials as to what is legal is final. They are not above the law. It is stated in 2 Wiel on Water Rights

(3d Ed.) Section 1193: "As is true of administrative officers generally, irrigation or water officials cannot authorize acts injuring existing owners; their action is invalid where it has that effect." In Section 1194 he states: "Since the authority of the water officials is administrative and not judicial, and they have no power to impair vested rights, their decision as to what existing rights are is not conclusive. Their action based upon a mistaken interpretation of existing rights will be open to collateral attack in court, by injunction or other process, as will also the action of other parties whom they may have authorized or in whose favor they may have decided." And in Section 1196 the author says: "A water commissioner is a public official, and may be enjoined like other officials if acting in excess of his authority, and adverse rulings of his may be questioned in court so far as they exceed his authority."

Even though junior appropriators might have a valid claim against a senior appropriator, they would not in an action such as in the case at bar lose anything substantial if they are not made parties thereto in view of the rule ordinarily applicable that parties are not bound by an adjudication in an action to which they are not parties. They would at most be deprived of the temporary enrichment—and an unjust enrichment it might be—which they would receive during the time that the headgates of the senior appropriator would be shut off, and if there are many junior appropriators the temporary benefit which they might receive would for many or most of them probably be infinitesimal. We think that what was said in Vineyard Land & Stock Co. vs. Twin Falls Oakley L. & W. Co., 9 Cir., 245 Fed. 30 is apropos here. There the court said: "No complaint is made that parties other than the defendants are attempting to interfere with plaintiffs' acquired water rights in Idaho, and there can be no cause for injunc-

tion against others than the defendants until attempted interference is shown. If there are any others who have rights superior to plaintiffs' not parties to the suit, of course their rights cannot be precluded by the decree herein. They may yet assert such rights, but they are not necessary parties to this suit, not having attempted to assert them to the impairment of plaintiffs' contention." To the same effect is Beck vs. Bono, 59 Wash. 479, 110 P. 13, and see Affolter et al. vs. Rough & Ready Irr. Co., 60 Colo. 519, 154 P. 738.

Before closing we think that we should refer to some decisions on the Federal Courts which have more or less bearing in the case at bar. In United States vs. Powers, 9 Cir., 94 Fed. 2d 783, waters in an Indian reservation were in question. The United States had constructed some irrigation works in the reservation and claimed that no one had a right to take waters from streams appurtenant to the reservation except through the irrigation works and sought an injunction. The defendants were successors in interest to Indian allottees and patentees and took water directly from the stream. The court held that the government had no right to an injunction. It said in part: "The Crow Indian Reservation was established by a treaty between appellant and the Crow Indians date May 7, 1868, 15 Stat. 649. There was in the treaty no express reservation of water for irrigation or other purposes. There was, however, an implied reservation. Winters vs. United States, 207 U. S. 564, 575, 28 S. Ct. 207, 52 L. Ed. 340. The implied reservation was to the Indians, not to appellant. Skeem v. United States, 9 Cir., 273 F. 93, 95; Conrad Investment Co. v. United States, 9 Cir., 161 F. 829, 831; Winters v. United States, 9 Cir., 143 F. 740, 745, affirmed in 207 U. S. 564, 28 S. Ct. 207, 52 L. Ed. 340. * * * Section 7 of the act, 25 U.S.C.A. Section 381 provided: 'That in cases where the use of water for irriga-

tion is necessary to render the lands within any Indian reservation available for agricultural purposes, the Secretary of the Interior be, and he is hereby, authorized to prescribe such rules and regulations as he may deem necessary to secure a just and equal distribution thereof among the Indians residing upon any such reservations; and no other appropriation or grant of water by any riparian proprietor shall be authorized or permitted to the damage of any other riparian proprietor.' To render all or any of the lands within the Crow Reservation available for agricultural purposes, the use of water for irrigation was necessary. For such irrigation, the waters of Lodge Grass creek, Little Big Horn river, and their tributaries, were available. Therefore, by section 7, supra, the Secretary of the Interior was authorized to prescribe rules and regulations to secure the just and equal distribution of said water among the Crow Indians, but he was not authorized, by rule, regulation, or otherwise, to deprive any allottee or patentee of lands in the Crow Reservation, or the successor in title of any such allottee or patentee, of his just and equal right to the use of said waters." The case was appealed to the United States Supreme Court. 305 U. S. 527, 83 L. Ed. 330, 59 S. Ct. 344. The court in that case said in part: "Respondents maintain that under the Treaty of 1868 waters within the Reservation were reserved for the equal benefit of tribal members (Winters vs. United States, 207 U. S. 564, 28 S. Ct. 207, 52 L. Ed. 340) and that when allotments of land were duly made for exclusive use and thereafter conveyed in fee, the right to use some portion of tribal waters essential for cultivation passed to the owners. The respondents' claim to the extent stated is well founded. * * * The petitioners have shown no right to the injunction asked." A similar situation arose in the case of United States vs. Alexander et al. 131 Fed. 2d 359, and the holding in that case was that the United States was not entitled to an injunc-

tion. The court stated in part: "The government's claim cannot be sustained. Before it would be entitled to an injunction it must show that appellees have wrongfully diverted water. No violation of the Act of April 23, 1904, as amended by the Act of May 29, 1908 is shown, since there is no claim that appellees used an amount of water in excess of 'so much water as may be required to irrigate such lands.' * * * That statute provides for promulgation of such rules and regulations as the Secretary of the Interior might deem necessary to secure the just and equal distribution of water. No such rules and regulations have been promulgated herein pursuant to that statute. * * * There not being a rule or regulation, of course a violation thereof could not be shown." While it has been said that in order for a plaintiff to obtain an injunction, he must submit proof of the right to the use of a specified quantity of water (Lewis vs. Hanson, (Mont.) 227 P. 2d 70), yet, if the United States Government could not stop the successors in interest of Indian allottees and patentees by an injunction to take water from the streams appurtenant to the reservation, it is difficult to see that the officials of this state could stop them by their arbitrary act from doing likewise.

In the foregoing cases the lands involved were in an Indian Reservation and it was held that in order to determine the extent of the right of the parties to take water from the streams, it was necessary to bring into the case parties equally interested with the defendants. In the case at bar, no Indian reservation any longer exists so far as the lands of the plaintiffs are concerned, but there may be other parties, allottees and patentees or their successors in interest who have an equal right to the waters of Owl Creek with the plaintiffs herein. If, therefore, it should appear hereafter that there are such other parties, they should be brought in and made

parties to this action in order that their rights as well as those of the plaintiffs may be determined herein.

The action herein is based on tort on the part of officials. It is not an action against the State. 59 C. J. 310.

The order of the trial court in sustaining the demurrer herein and the judgment herein are reversed and the cause is remanded to the District Court for further proceedings not inconsistent with this opinion.

KIMBALL, C. J. and RINER, J. concur.