Argued May 3, affirmed May 25, rehearing denied June 29, 1920.

## ALLEN *v.* MAGILL.

(189 Pac. 986; 190 Pac. 726.)

**Waters—Appropriation Requires Beneficial Use as Well as Diversion.**

1. There can be no valid appropriation of water unless the water is subject to appropriation, and is not only diverted, but also applied to useful purpose, and no appropriation is valid in excess of what is reasonably necessary for the useful purpose in view.

**Waters—Complaint Stating That Plaintiff Appropriated Water of Stream for Irrigation Held Sufficient.**

2. A complaint alleging that plaintiff had appropriated all the water of a stream which flowed a specified number of miner's inches during the irrigating season for irrigation of his tract of land, specifically described in the complaint, for which purpose the amount of water was insufficient, sufficiently alleges the appropriation of the water, which is an ultimate fact.

**Waters—Federal Desert Land Act Made Water Subject to Appropriation Apart from Land.**

3. The Desert Land Act of March 3, 1877 (U. S. Comp. Stats., Sections 4674–4678), separated the land belonging to the United States from the waters flowing thereon, so that anyone who thereafter first appropriated it to beneficial use took it independent of the rights of a subsequent settler on the land.

**Waters—Diversion by Trespass Gives No Rights Until Perfected by Adverse Possession.**

4. The right to divert water for beneficial use on the land' of another does not give the right to enter the other land for that purpose, and a diversion made by trespass on the land of another will not be protected in equity unless possession has been continued adversely long enough to give title by prescription.

**Pleading—Reply Alleging Adverse Possession No Departure from Complaint Alleging Appropriation.**

5. Under a complaint alleging appropriation of water, plaintiff could show appropriation upon unoccupied government land or upon private land with consent of the owner, or appropriation by trespass to which title had been perfected by prescription, so that a reply alleging adverse possession merely strengthens the complaint and is not subject of demurrer on the ground of departure.

**Waters—Evidence Held to Show Appropriation to Beneficial Use.**

6. Evidence showing that for more than twenty years continuously plaintiff had diverted and applied to his land described in the complaint the water from a stream *held* sufficient to establish his appropriation and entitle him to an injunction notwithstanding differences in the testimony of the different witnesses.

From Wallowa: JOHN W. KNOWLES, Judge.

In Banc.

This is a suit to enjoin the defendants from diverting the waters of a small unnamed stream in Wallowa County, to the exclusive use of all of which waters the plaintiff claims the right. In his complaint he describes his land by legal subdivisions, states that the stream in question has its source south of his property and flows northerly upon his premises, the average flow thereof being about 13 miner's inches during the irrigating season of each year, and then makes this allegation:

"That on or about the —— day of ——, 1884, plaintiff diverted and appropriated all of the waters of said stream, and so diverted and appropriated the same for the irrigation of a part of said lands of plaintiff and for the furnishing of motive power for the operation of a churn on said lands; and on or about said —— day of ——, 1884, plaintiff used and applied all of the waters of said stream for the irrigation of a part of said lands and the operation of

such churn; and ever since said —— day of ——,
1884, all of the water of said stream has been, and
now is, used by plaintiff on said lands owned by
plaintiff, and such use has been continuous and unin-
terrupted.''

The complaint further states, in substance, that the
plaintiff gradually increased the irrigable space on
his land until it aggregated 118 acres, which for more
than twenty years last past he has, and does now,
irrigate. It is averred that the use of the water is
indispensably necessary for raising crops on said
lands.

The plaintiff charges that on July 20, 1917, the
defendants wrongfully diverted the waters of said
stream and conducted them upon land other than his
said premises, which wrongful diversion has been
continued to the present time by the defendants. It
is said in the complaint:

''That the diversion, appropriation and use of said
waters by plaintiff has been, and is, long prior in
time and in right to the diversion of said waters by
defendants, or by either of them or by any other
person, persons, firm or corporation; and by reason
thereof plaintiff is entitled to the use of all of the
waters of said stream.''

Finally averring that the defendants unless en-
joined will continue to divert the waters away from
his land, the plaintiff prays that they be perpetually
restrained from so doing.

The defendants filed a general demurrer against
this complaint, which was overruled. They answered,
stating that they ''admitted all the allegations of
said amended complaint, beginning with line num-
bered 9 and ending with line numbered 21, of page 1
thereof.'' Owing to the difference between the
manuscript complaint and the printed record, this

admission is unintelligible. Affirmatively the defend-
ants say, in substance, that the defendant Magill and
his predecessors in interest have been and now are
the owners of certain lands lying south of the plain-
tiff's holding, and upon which the stream in question
takes its rise. Magill also is said to own other lands
lying north of those of the plaintiff, and it is stated
that all of that defendant's lands are improved agri-
cultural tracts, requiring irrigation in order to main-
tain their value and productiveness. It is stated that
the stream rises on Magill's property, flows through
the same and naturally supplies water to it, and that
for more than thirty-five years last past the waters of
the stream have flowed in a natural channel, subirri-
gating Magill's lands, during all of which time he
and his predecessors have used the same for stock
water and for artificial irrigation upon 45 acres of
his property, continuously, uninterruptedly, openly,
visibly and notoriously, under a claim of right by
Magill and his predecessors hostile and adverse to
any claim of the plaintiff and his predecessors in
interest. The defendants avow that the use of the
water of said stream, and the whole thereof, is neces-
sary to enable Magill to cultivate his lands, without
which they would be greatly damaged and impaired
in value. It is said, in substance, that the other de-
fendant uses the water only by the permission and
license and as a tenant of Magill. The answer prays
for a dissolution of the injunction and that the plain-
tiff be enjoined from interfering with the waters of
the stream.

The reply admits Magill's ownership of the lands
as stated in the answer, but says that he did not be-
come the owner thereof until subsequent to the year
1887. The source of the stream as averred in the

answer is admitted by the reply. After stating new matter which is not necessary here to be considered, the reply concludes with a further and separate averment of new matter as follows:

"That ever since the —— day of ——, 1884, plaintiff has possessed, owned and used, and is now possessing, owning and using, all of the water of the stream mentioned and described in the answer herein, and plaintiff has so possessed, owned and used, and is now possessing, owning and using, all of the water of said stream for the irrigation of plaintiff's lands described in the amended complaint herein, and in the manner as is alleged in said amended complaint. And such possession, ownership and use of said water by plaintiff ever since said —— day of ——, 1884, has been and is actual, open, exclusive, notorious, visible, hostile, adverse, continuous and uninterrupted and with the knowledge of defendant, Magill, and his predecessors in interest, and against any and all right, or claim of right, of said defendant, Magill, and his predecessors in interest."

The defendants demurred to the part of the reply last above quoted, but the demurrer was overruled.

At the opening of the trial of the cause the defendants objected—

"to any and all evidence or testimony offered by the plaintiff in support of his complaint, for the reason that it is not alleged and it does not show a right to this water under either of the recognized heads known in this state: First, he does not say that he appropriated this water while the lands over which he has diverted it belonged to the United States government, which we claim is essential as a foundation for the right known as prior appropriation; second, he does not show a right by adverse user, because in the complaint he does not show that his use is open, adverse or hostile to any claims of the defendant, or anyone else, for such period of time as would constitute a right under the statute of limitations or otherwise."

The objection was overruled by the court, and the case was tried on the theory that this objection was to be considered as urged against all the testimony offered by the plaintiff in support of his suit. Disregarding all attacks upon the complaint and against the testimony for the plaintiff, the court made findings and entered a decree in favor of the plaintiff, substantially according to the prayer of the complaint. The defendant Magill appeals.

AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. Daniel W. Sheahan.*

For respondent there was a brief and an oral argument by *Mr. A. S. Cooley.*

BURNETT, J.—The allegations quoted from the complaint constitute all of the matter upon which the plaintiff in that pleading predicates his right to the water in question.

1. We will first determine the validity of the general demurrer to the complaint. The contention of the defendant is that the plaintiff must show in his complaint not only that he took the water and applied it to a useful purpose, but also that the place of appropriation was upon unoccupied land belonging to the United States. The argument of the defendants seems to be that merely to say that the plaintiff appropriated the water is but to state a conclusion of law, and that facts should be averred from which the court could draw the conclusion that there had been an appropriation; in other words, that all of the elements of a valid appropriation should be alleged. It is true that there can be no valid appropriation unless the water is subject thereto and is not only diverted, but also applied to a useful pur-

pose; and further, that no appropriation can be predicated of excess in the use of water beyond what is reasonably necessary for the useful purpose in view. Like ownership, appropriation is an ultimate fact: 17 Ency. Pl. & Pr. 328. A discussion of pleading an ultimate fact is found in *Oregon Home Builders* v. *Montgomery Investment Company,* 94 Or. 349 (184 Pac. 487), in an opinion by Mr. Justice HARRIS. In *Ely* v. *New Mexico etc. Ry. Co.,* 129 U. S. 291 (32 L. Ed. 688, 9 Sup. Ct. Rep. 293, see, also, Rose's U. S. Notes), we find the statement of the principle in the syllabus, reading thus:

"An allegation, in ordinary and concise terms, of the ultimate fact that the plaintiff is the owner in fee, is sufficient without setting out matters in evidence, or what have sometimes been called probative facts, which go to establish that ultimate fact."

In *Hague* v. *Nephi Irrigation Company,* 16 Utah, 421 (52 Pac. 765, 67 Am. St. Rep. 634, 41 L. R. A. 311), applying particularly to the appropriation of water, the precept is thus stated in the syllabus:

"Where the allegations of a complaint in a suit brought to determine the plaintiff's right to the use of water of a stream state, in general terms, a cause of action by alleging clearly and distinctly ownership, invasion of rights, and injury, without distinct allegations of how plaintiff became the owner of a water right, whether by appropriation, adverse user, or purchase, plaintiff's title can be shown by proof, and the allegations will be sufficient to withstand a general demurrer."

An analogy may be drawn from *Rogers* v. *Miller,* 13 Wash. 82 (42 Pac. 525, 52 Am. St. Rep. 20), where it is held that in an action to quiet title an allegation of ownership in fee admits proof of any title, including that acquired by adverse possession. On the

question of stating ownership as an ultimate fact,
see, also, *Turner* v. *White,* 73 Cal. 299 (14 Pac. 794);
*Heeser* v. *Miller,* 77 Cal. 192 (19 Pac. 375); *Souter*
v. *Maguire,* 78 Cal. 543 (21 Pac. 183); *Johnson* v.
*Vance,* 86 Cal. 128 (24 Pac. 863); *Fudickar* v. *East
Riverside Irr. Dist.,* 109 Cal. 29 (41 Pac. 1024);
*Hanscom* v. *Hinman,* 30 Mich. 419. There are cases
in Colorado, such as *Farmers' High Line etc. Co.* v.
*Southworth,* 13 Colo. 111 (21 Pac. 1028, 4 L. R. A.
767), and *Sterling* v. *Pawnee Ditch Extension Co.,*
42 Colo. 421 (94 Pac. 339, 15 L. R. A. (N. S.) 238),
which hold that:

"In pleading an appropriation of water, the acts
constituting such appropriation must be stated and
not merely legal conclusions, so that, upon an inspec-
tion of such pleading it can be determined whether
or not the facts stated constitute, in law, a valid ap-
propriation of water for a beneficial use."

The pleadings in these cases state that the water
had been diverted, but fail to aver that it had been
applied to any useful purpose, and on account of
such omission the court held that the complaint
stated merely conclusions of law.

2. That objection is met in the instant case by the
allegations to the effect that the water was used for
the necessary irrigation of the lands of the plaintiff,
making the same more valuable for pasturage and
crops which cannot be raised without irrigation. In
*Porter* v. *Pettingill,* 57 Or. 247 (110 Pac. 393), Mr.
Justice EAKIN writing the opinion, it was held that:

"A complaint to determine the priority of irriga-
tion water rights is insufficient where it does not * *
show that any particular land needed irrigation, does
not specify the amount of water diverted nor the
amount needed to the acre, or for any specific land,
and does not show how much water plaintiffs' gran-

tors acquired a right to use; an allegation that plaintiffs were entitled to all the water in a creek during the dry season being too indefinite."

3. In this case, although the plaintiff claims all of the water in the stream in question, yet the amount thereof is alleged. The lands to which it is applied are described with particularity, and it is shown, in substance, that even the amount mentioned is not sufficient for proper irrigation of the land. The record shows that all of the lands involved in this suit were acquired from the United States after the passage of the Desert Land Act of March 3, 1877, Chapter 107 (19 Stats. at L. 377, U. S. Comp. Stats., §§ 4674–4678, 8 Fed. Stats. Ann. (2 ed.), pp. 692–696).

In *Hough* v. *Porter,* 51 Or. 318, 406 (95 Pac. 732, 98 Pac. 1083, 102 Pac. 728), Mr. Commissioner King, discussing the congressional legislation mentioned, reaches the following conclusion:

"Congress could reasonably presume that, if an appropriation were desired for the purposes mentioned in the act, some steps would be taken manifesting such intent, and that, if the owner is not the first to move in that direction, the person making an application thereof to a beneficial use within a reasonable time ought to be rewarded for his diligence, and he is entitled to have his rights in that respect recognized and protected. For this reason the settler who has acquired title to the land through which any stream may flow, took it subject to the rights of the person who has or who may subsequently make the first use of such stream for the purposes enumerated in the act, excepting only as to the natural wants and needs of such settler."

4. The course of reasoning seems to be that, under the Desert Land Act, Congress has divorced the water from the public domain through which it flows, and as to all surplus water over and above what the

settler may divert upon his land, for a useful purpose within the purview of the statute, has declared that it "shall remain and be free for the appropriation and use of the public for irrigation, mining and manufacturing purposes, subject to existing rights." The conclusion suggested is that as to all land claimed by a settler after the passage of the Desert Land Act, he takes it thus separated from the waters flowing thereon, so that anyone thereafter who first appropriates the water will take it independent of his rights thereto, beyond his mere domestic use. This, however, does not give anyone a right to go upon the lands of the settler without his permission, to divert the waters flowing through the same. Although the water is subject to appropriation, the right to appropriate must be exercised without trespass upon the land of another. The water may be running on its natural course and subject to appropriation, but no one can enjoy this bounty of the government unless he can get to the water. He may avail himself of the permission of the government to approach the stream on its land. He may secure by purchase or gift the consent of private owners to gain access over their lands, and by adverse possession for the statutory prescriptive period he may maintain his appropriation as against private owners over whose lands he has conducted the water: *Caviness* v. *La Grande Irr. Co.*, 60 Or. 410, 420 (119 Pac. 731). A court of equity will not aid one who takes the water without right in the first instance, unless his possession has been continued adversely long enough to give him title by prescription.

5. We conclude that the allegations of the complaint are sufficient as against general demurrer to allow the plaintiff to prove an appropriation of the

water as against the general issue. Neither is the new matter in the reply a departure from the complaint. In support of his allegation of appropriation, the plaintiff can show either that he entered upon unoccupied government land and found the water subject to appropriation under the Desert Land Act, and from that point diverted it to his own premises, in which instance he would be relying upon the promise given by the then riparian owner, the government of the United States, expressed in that legislation; or he could also show that by the permission of a private riparian owner he had a similar license to appropriate the water; or, finally, he could show that, although the owner of the bank washed by the public waters had not given his consent to divert the stream, yet he had gone upon that land and had taken out the water and maintained his adverse possession thereof for the prescriptive period. All this under the best considered authorities can be shown under the general allegation of appropriation and application to a specified useful purpose. In the light of this rule the new matter in the reply alleging adverse possession merely restates in detail what could be proved under the complaint as already framed. In other words, it is not a divergence from, but rather a strengthening of the complaint, and hence is not amenable to demurrer on the ground of departure: *Moores* v. *Clackamas County,* 40 Or. 536 (67 Pac. 662); *Goodwin* v. *Tuttle,* 70 Or. 424 (141 Pac. 1120); *Mascall* v. *Murray,* 76 Or. 637 (149 Pac. 517, 521).

6. A careful reading of the testimony in the record, considered with the exhibits offered in evidence, convinces us that for more than twenty years continuously next prior to the commencement of the suit,

the plaintiff diverted and applied to his lands speci-
fied in the complaint all the water of the stream at
the point where it enters the south boundary of his
land, all without interruption and adversely to all
other claimants until the act complained of, the di-
version of the water by the defendants, occurring in
1916 and 1917. The uncontradicted testimony of a
witness for the plaintiff shows the amount of the
water diverted to be 12¾ miner's inches, and the
testimony abundantly shows that it has been applied
upon 15 to 18 acres of plaintiff's land on the west
side of the stream and 50 acres on the east side, be-
sides being used to water domestic animals and for
household purposes on the west side. Thus are met
all the requisites of appropriation. The water was
reserved from the land in a measure by the Desert
Land Act and made subject to appropriation. The
holders of all of the realty mentioned in the plead-
ings took with notice of that act. The plaintiff has
gained access to that public water. He has at least
shown that he has maintained his actual diversion
of the water for the useful purpose of irrigation for
more than the prescriptive period, adversely to all
others, and hence has proved the allegations of his
complaint. On the other hand, the showing is ample
that by reason of affluent springs below the point
of the plaintiff's diversion, coupled with the run-off
of upstream irrigation, the land of the defendant
Magill lying downstream from that of the plaintiff
has an abundance of water. As to Magill's holdings
south and above the plaintiff's premises, the griev-
ance complained of consisted of an attempt to apply
water to land hitherto unbroken, and hence subordi-
nate to the plaintiff's appropriation.

As usual in such cases, the witnesses are not all agreed, but the decision of the learned judge sitting in the original trial, who heard them, saw them and observed their demeanor on the witness-stand, is entitled to our consideration. Under all these circumstances of pleading and evidence, we think the decree of the Circuit Court should be affirmed.

AFFIRMED.

---

Denied June 29, 1920.

PETITION FOR REHEARING.

(190 Pac. 726.)

On petition for rehearing. DENIED.

*Mr. D. W. Sheehan,* for the petition.

*Mr. A. S. Cooley, contra.*

BENSON, J.—The defendant has presented a petition for rehearing in this case, wherein it is very earnestly contended that the conclusions reached in the original opinion herein are not justified by the evidence. We have therefore made a careful review of the record, and the result is that our former opinion is confirmed thereby. It is true that many years ago there was some sort of an agreement between the plaintiff and defendant's predecessor in interest whereby arbitrators made a division of the waters of the stream, but defendant's predecessor found that the water so allotted to him was so inadequate as to be valueless, and was abandoned more than ten years prior to the commencement of this suit. The petition for rehearing is therefore denied.

AFFIRMED. REHEARING DENIED.