WILLIAM HUNZIKER and R. E. GREENWALT,

*Plaintiffs and Appellants*

vs.

W. J. KNOWLTON, Water Division Superintendent of Water Division Number One, State of Wyoming, and RACHAEL LE VASSEUR,

*Defendants and Respondents,*

and

MARGARET M. GOETZ, HENRY P. BATH, BESSIE K. BATH and OSCAR MARSH,

*Interveners.*

(No. 2804; March 4th, 1958; 322 Pac. (2d) 141)

242

For the plaintiffs and appellants, the cause was submitted upon the brief of Greenwood, Ferrall & Bloomfield of Cheyenne, Wyoming, and oral argument by Bard Ferrall.

For the defendants and respondents, the cause was submitted upon the brief and also oral argument of Lynn Rees of Laramie, Wyoming, County and Prosecuting Attorney of Albany County.

For the interveners, the cause was submitted upon the brief of Corthell and King of Laramie, Wyoming, and oral argument by M. E. Corthell.

Heard before Blume, C. J. and Harnsberger and Parker, JJ.

244

## OPINION

PER CURIAM.

Plaintiffs, Hunziker and Greenwalt, each alleging that he was the owner of a certain tract of land in Albany County and that an appropriation of irrigation

water had been made for said land, joined in seeking an injunction against the defendants, water officers of the State of Wyoming, from "continuing to deny the plaintiffs * * * a right to divert and take" the irrigation water for said lands. Various other landowners and water users in the area intervened and prayed for the dismissal of plaintiffs' petition, alleging that Bruce G. Eaton, a former owner of the lands in question, had at the dates of the sales reserved the water rights and later transferred them to the Divide Canal and Reservoir Company, which company had by agreement with Sand Creek appropriators abandoned the said water rights. A temporary injunction was granted, but upon final hearing the trial court denied the permanent injunction and resolved the matter against plaintiffs who have appealed to this court.

The controversy arose from the fact that in 1907 and 1908 Eaton, then owner of lands, a part of which is now claimed by each plaintiff, issued warranty deeds to plaintiffs' predecessors in interest specifically *reserving water rights* unto himself, his heirs, and assigns. Plaintiffs now contend that all of the water rights appurtenant to the lands at the time of the Eaton conveyances were passed by the deeds. The petition related only to the ownership of the lands, appropriation of the water, some use of the water, and the improper actions of defendants in forbidding plaintiffs to use. it. The arguments however are more comprehensive, urging that Eaton's acts in attempting to reserve the water rights were void and that the defendants being administrative officers of the State are bound by the records of the State Board of Control which show the water to be appurtenant to the lands in question. Defendants and the interveners counter with the view that the water rights at the dates of the Eaton deeds could have been transferred separate from the lands, further insisting that plaintiffs have offered

no evidence of water rights and have failed to show any injury to themselves by the Eaton reservations.

Although both the pleadings and arguments concern themselves with a discussion of the legality and propriety of the transfer by Eaton of the "reserved water rights" to the Divide Canal and Reservoir Company, the subsequent abandonment of the appropriations by that company, and matters of similar import, we are at a loss to understand why anything that occurred after the "Eaton reservations" is germane to the present controversy.

As we see it, the situation presents the following alternative possibilities, either of which eliminates from present consideration any subsequent inconsistent acts either by the parties or by the Wyoming water officials:

(1) If the purported reservations of the water rights by Eaton were *legally effective,* then plaintiffs could have received no water rights and consequently have no standing here. On this point it may be observed that the record of the Board of Control is prima-facie evidence of the right to take water but is not conclusive. See Hamp v. State, 19 Wyo. 377, 118 P. 653, 663.

(2) If on the other hand the water rights were appurtenant to the land at the time of the Eaton deeds and by *operation of law* the deeds passed the water rights with the lands (notwithstanding anything in the deeds to the contrary) then the water rights have passed to the plaintiffs by mesne conveyances and any subsequent attempts of Eaton to assign or of his successors of interest to abandon are without force or effect.

The outcome of the present litigation depends upon which of the above alternatives was disclosed by the pleadings and evidence in the court below.

We advert then to plaintiffs' petition. Nowhere therein is it stated in clear and concise language that plaintiffs are the owners of the water rights in question, and it must necessarily follow that plaintiffs rely upon the law in effect during the years of 1907 and 1908 to show their ownership of water rights. In general, at the dates the Eaton reservations were made it was the unquestioned rule that in the absence of specific provisions by the state to the contrary water rights might be reserved by the grantor. In 2 Kinney on Irrigation and Water Rights, 2d ed., p. 1780, it is stated:

"If specified in the deed conveying a certain tract of land, the water right, although it may in fact be an appurtenance to the land, may be reserved by the grantor, who may then transfer the water claimed under the right to some other land, provided, of course, that the rights of others are not injured by the change."

To a similar effect see the statement in 1 Wiel, Water Rights in the Western States, 3d ed., pp. 582, 583:

"Unless otherwise provided by statute, the right may be sold separate from land, since it is independent of title to or possession of land * * *.

"* * * * though a water-right is usually appurtenant to the land where used, yet it may be reserved on a sale of the land. A 'reservation' is something extracted from the whole *res* covered by the general terms of the grant, lessening the thing granted from what it would otherwise have been. * * *"

Wyoming at that time had no statute preventing the

reservation of a water right or the sale of it separate from the land. Accordingly, we have no alternative but to look to the views of the court at that time for the guiding principle on the subject. In reviewing cases of the era following the adoption of the constitution and prior to the Eaton deeds, we find the following statements which are of some significance.

In Frank v. Hicks, 1894, 4 Wyo. 502, 35 P. 475, 35 P. 1025, Judge Conaway said at page 480 in discussing another case:

" * * * If this means simply that the owner of land, and of a water right from which the land is irrigated, may sell the water right without selling the land, it is in harmony with the decisions of other courts. * * * " and at page 484:

" * * * It is true that by all the authorities the water right is separable from the land to which it is appurtenant, and may be sold separate from the land, and the place of diversion and place of use may be changed. But this is only when these acts are not injurious to the rights of others. * * * "

In Johnston v. Little Horse Creek Irrigating Co., 1904, 13 Wyo. 208, 79 P. 22, 24, 26, 27, 70 L.R.A. 341, 110 Am.St.Rep. 986, Judge Potter said:

" * * * The only limitation upon the right of sale of a water right separate from the land to which it was first applied, and to which it has become appurtenant, laid down by any of the authorities, is that it shall not injuriously affect the rights of other appropriators. * * *

*       *       *       *       *

"We cannot agree that it requires a strained and distorted interpretation of our statutes to uphold the doctrine permitting the sale of a water right separate

from the land. On the contrary, it would require a strained construction of the statutes to deny such a right. * * *

\*  \*  \*  \*  \*

" * * * We can perceive nothing in the fundamental principles underlying the doctrine of prior appropriation in the use of water that interferes with the right of sale of the water right, but, on the contrary, those principles seem to be in harmony with such right. * * *"

The matter was not again discussed by the court[1] prior to the Eaton deeds in 1907 and 1908, and whether or not there be disagreement about the propriety of the rule, it was then well established in this State that appurtenant water rights might be sold separate and

apart from the lands. The legislature by Ch. 68, S. L. of Wyoming, 1909, now incorporated in § 71-401, W.C. S.1945, changed this rule and "adopted the policy that a water right by direct flow from a stream shall be attached to land." Scherck v. Nichols, 55 Wyo. 4, 95 P.2d 74, 80.

Some more or less casual reference has been made in both the pleadings and the evidence to the use of irrigation water by the plaintiffs. However, no claim was based on this fact; and, even though it had been, use of the water would not, standing alone, give them any rights to title by prescription. See Campbell v. Wyoming Development Company, 55 Wyo. 347, 100 P.2d 124, 102 P.2d 745.

---

[1]The legislature (Ch. 97, S. L. of Wyoming, 1905) reiterated the court's rule that a transfer of a water right from land on which it had been used should not be valid if injurious to other appropriators and provided the manner by which a transfer of water rights might be effected by deed.

Certain matters urged in the briefs though not essential to a determination of the case may warrant some mention:

(1) Plaintiffs state that water is the property of the State of Wyoming, is under the State's control, and is in fact held by the State in trust for its people. We concur, but we think that such principle does not alter the fact that under the views extant at the time of the issuance of the Eaton deeds certain rights in and to water might be reserved by the seller of land. [1]The legislature (Ch. 97, S. L. of Wyoming, 1905) reiterated the court's rule that a transfer of a water right from land on which it had been used should not be valid if injurious to other appropriators and provided the manner by which a transfer of water rights might

(2) Plaintiffs point out that Eaton did not follow the provisions of Ch. 97, S. L. of Wyoming, 1905, which provided the method of transfer, and say, "The reservations * * * did not accomplish a transfer * * *." Plaintiffs thus admit that the water rights did not leave Eaton at the time of the deeds in question, and with this we agree. Whether or not any subsequent attempt by Eaton to convey could be effective is a matter not before the court.

(3) We note with some interest the reference to the cases of Quinn v. John Whitaker Ranch Co., 54 Wyo. 367, 92 P.2d 568, and Merrill v. Bishop, 69 Wyo. 45, 237 P.2d 186, requiring water officers to make diversion in accordance with determined priorities. The principle therein announced is without question the law of the State, but plaintiffs in the present situation find themselves without rights to the water and therefore not entitled to invoke such rule.

(4) It is argued both directly and by implication that the plaintiffs' lands could not be sold separate and apart because a water right cannot be a mere "floating right," and further that the grantor Eaton sought to hold the water for purposes of an illegal sale. These points require no discussion because the validity of any water rights reserved by Eaton is not in issue in the present case. Neither do we pursue or resolve the arguments regarding abandonment of water rights or the legal standing of any persons to use the water originally appropriated for the lands now claimed to be owned by plaintiffs. Such problems may be resolved if and when they are properly presented to the court.

The record herein discloses no rights of plaintiffs, either pleaded or proved, and they have not shown themselves entitled to an injunction.

Affirmed.

254

## ON PETITION FOR RE-HEARING.

(No. 2804; April 22nd, 1958; 324 Pac. (2d) 266)

## OPINION

PER CURIAM.

The petition for a rehearing earnestly urges the court's error in holding:

" * * * Nowhere therein [in plaintiffs' petition] is it stated in clear and concise language that plaintiffs are the owners of the water rights in question, and it must necessarily follow that plaintiffs rely upon the law in effect during the years of 1907 and 1908 to show their ownership of water rights.

\*       \*       \*       \*       \*

"The record herein discloses no rights of plaintiffs, either pleaded or proved, and they have not shown themselves entitled to an injunction."
Careful consideration emphasizes the limitation of these statements to the petition and simultaneously discloses that the turning point of the case was the lack of proof rather than of pleading.

Plaintiffs now insist that (a) paragraphs 9 and 21 of their original petition allege sufficient ownership of water rights by describing the lands and thereafter stating that the water rights were "appurtenant to the above described lands" and (b) their "Replies to Answers and Answers to Cross Petition" should be considered as a part of the pleadings and that these clearly alleged ownership of the water rights.

We consider first the allegations of the petition. It sought an injunction to restrain the water officials

from denying certain water to plaintiffs, but ultimately

it requested a determination of the rights to the water. Thus, it was in effect a suit to quiet title and must be governed by the rules applicable to such actions.

"A suit to ascertain, determine, and decree the extent and priority of a water right and appropriation is held to partake of the nature of an action to quiet title to real estate. * * * " 44 Am.Jur. Quieting Title § 9.

And see Gutheil Park Inv. Co. v. Town of Montclair, 32 Colo. 420, 76 P. 1050, discussing the suit regarding irrigation water rights which was held by the court to have some of the characteristics of a bill to quiet title and some of the characteristics of an injunction. See also Allen v. Magill, 96 Or. 610, 189 P. 986, 190 P. 726, a suit to enjoin the diversion of water, wherein an analogy was drawn between such an action and a suit to quiet title. 2 Kinney on Irrigation and Water Rights, 2d ed., p. 1330, states:

" * * * a suit to quiet title to a water right for irrigation purposes, and to determine the right to divert the waters from a stream for such purposes, is in the nature of an action to quiet title to real estate. * * * "

In Durell v. Abbott, 6 Wyo. 265, 44 P. 647, we discussed the criteria for a petition in an action to quiet title under § 2985 et seq., R.S. 1887 (now § 3-7001 et seq., W.C.S.1945), approving as sufficient a petition alleging, inter alia, that plaintiffs were in possession of certain described real property, that they claimed title in fee to said premises, and that defendant had no estate, right, title, or interest whatsoever in said land. Although the petition set out was not designated as the minimum requirement of pleadings in suits of that nature, we think that it is. Under such standards the direct allegations of plaintiffs' petition in the present

case fell short of stating in clear and concise language any ownership of water rights.

The legal effect of the reservations of water rights at the time the deeds to the lands were issued to plaintiffs' predecessors in interest and the claimed use of water by plaintiffs at various times require no elaboration since our views were adequately presented in the original opinion.

We turn then to plaintiffs' contention that the allegations of their "Replies to Answers and Answers to Cross Petition" should be considered in the light of § 3-1705, W.C.S.1945, as curing any defects in the petition. That is a matter of some doubt. Our decision was based upon the merits of the respective rights of the plaintiffs and defendants—without relation to the rights of the interveners—and no authorities have been cited to justify the supplementing of a petition against one party by statements contained in reply or answer to cross-petition directed to other parties. In any event, our decision was not predicated upon the failure of plaintiffs' pleading but rather upon insufficient proof of any right to relief.

Rehearing Denied.