**RANGER INSURANCE COMPANY, Appellant (Defendant below),
Dick Lange, individually and dba Western Agency Insurance (Defendant below),
v.
Earl C. CATES, Appellee (Plaintiff below).**

**No. 4093.**

Supreme Court of Wyoming.

Oct. 19, 1972.

Rehearing Denied Nov. 20, 1972.

1256

David A. Scott, of Murane, Bostwick, McDaniel, Scott & Greenlee, Casper, for appellant.

Leimback, Aspinwall & Hofer and Ronald W. Hofer, Casper, for appellee.

Before McINTYRE, C. J., and PARKER, McEWAN, and GUTHRIE, JJ.

Mr. Justice PARKER delivered the opinion of the court.

Plaintiff Cates sued the Ranger Insurance Company, alleging the issuance of a policy covering his plane, the waiver of Paragraph 5 of "Special Provisions Endorsement"[1] by Lange, the agent for the insurance company,[2] a subsequent crash, demand for insurance benefits, and the refusal to pay. The company admitted issuance of the policy through Lange but denied both the waiver of Paragraph 5 and liability. The case was tried to a jury, which was given no written interrogatories upon issues of fact and rendered a general verdict for $9,250 (based on the market value of the plane at the time of the accident).

The significant facts are uncomplicated and for all practical purposes largely undisputed. Plaintiff, an accountant and engaged in the mineral business, in October 1969 purchased a Cessna 182 (Skylane) on which he secured insurance through Lange. His principal objective in buying the aircraft was to fly himself and personnel used in his mineral business to where they were working in the Red Desert. Lange placed the insurance application with Aviation Office of America, a corporation which functioned as managing general agent for six insurance companies, including Ranger. When Lange received the policy, which was effective November 19, 1969, he took it to Cates and they discussed Paragraph 5. Cates decided he could not accept the policy and described to Lange the areas

which would be used as landing strips, i. e., that he would land out at his drilling operations, using hard-packed surface roads. According to Cates, later that day Lange phoned him to say that he had contacted Aviation Office of America, explaining that under the circumstances Cates would not accept the policy and had been told that if other aircraft were using "the same" it would be okay. Both men agreed that a letter should be written; and the following, under date of January 3, 1970, was sent by Lange to Aviation Office of America:

"Insured wishes to have the special provisions endorsement clarified. #5 under the policy. What consitutes [sic] an airport? They use this plane for business and pleasure. They check on their buiness [sic] locations around Casper, Wyo. and they have hard packed approved landing strips which they use. They do not land on open range, but on landing strips built to accommodate this type of aircraft. Please indicate if policy covers. Thank you."

Whereupon Alderman, vice-president of the corporation, responded in writing:

"If it is a surface prepared for aircraft operation there is no problem."

Lange said he took this letter to plaintiff and that they agreed it was not "sufficient to clarify the position we were in landing the aircraft out in the areas that he was landing." Lange returned to his office and by telephone contacted the person whom he believed to be the one who wrote the letter, discussing the letter and telling him, inter alia, that the insured would want coverage for landing out near his drilling operation, that they had hard-packed surface roads that were straight and wide enough to accommodate an aircraft and where other planes had landed and taken off. He was told that in such a situation

---

1. "This Policy does not apply to any occurrence or to any loss or damage involving the intentional use, except emergency, of any location other than an airport regularly used for the normal landing and taking off of the type aircraft insured under this Policy."

2. Although Lange was originally joined as a defendant, the court granted a motion for summary judgment in his favor; and this matter was not appealed.

there should be no problem. Lange said he then relayed this information to Cates, who indicated that he did not like the clause in the policy but since Lange had written the letter and also called he did not see any problem.

On September 23, 1970, plaintiff flew from Casper to the west Red Desert area, landing in flat terrain on a graded hard-packed dirt road. He was there approximately four or five hours, probably leaving between 5 and 6 p. m. The weather was clear with gusty winds. According to Cates, his plane lifted off the ground, between ten and thirty feet, and he had flown three hundred feet, apparently straight, when the plane made an almost ninety-degree right turn and crashed.

Defendant's appeal is based on the following grounds:

1. That as a matter of law the plaintiff failed to prove a waiver of the exclusionary clause in question and the trial court therefore erred in not directing the verdict in favor of the appellant.

2. That the plaintiff failed to prove as a matter of law a modification of the exclusionary clause, which would have brought the road used by the plaintiff within policy coverage, and the trial court therefore erred in not directing the verdict in favor of appellant; that further, the record does not contain substantial evidence, even if believed, upon which to justify the verdict in favor of plaintiff on the grounds that said paragraph had been so modified.

3. That the trial court erred in giving Instruction 4 relating to the doctrine of estoppel, and further, that the instruction on estoppel given did not correctly set forth said doctrine as did Instruction A offered by defendant for the purpose of correcting Instruction 4.

4. That the court erred in refusing to give defendant's Instruction B.

5. That the court erred in allowing plaintiff and his witnesses to testify, in effect, that pilots customarily landed planes on roads in the general area of the Red Desert basin.

6. That the court erred in allowing plaintiff's witness, Gary Gosney, to testify concerning his landing and taking off from the road used by Cates subsequent to the latter's accident.

While plaintiff contended at the trial and argues here that he was in flight prior to the crash, that it made no difference if it was for 300 feet or 300 miles, and that since he was in flight the policy should cover the accident, there seems no occasion to enter into a discussion of this thesis.

### Waiver

■ In its first point the defendant takes the position, as it did at the trial, that in view of the evidence concerning the type of road used by Cates at the time of the accident plaintiff's case had to stand or fall on the allegation in his complaint to the effect that the exclusionary provision identified as Paragraph 5 had been waived by Lange. While the defendant says it does not deny the answering of the letter nor the phone call, it maintains that admittedly no waiver had been made by Aviation Office of America, arguing that the question on the issue of waiver was whether or not Lange as an agent of Aviation Office of America had authority to waive such a provision as Paragraph 5, citing Sowers v. Iowa Home Mutual Casualty Insurance Company, Wyo., 359 P.2d 488, 492, as authority for the holding that under a statute such as § 26–66, W.S.1957, not defining the power of an agent, the agent has no power to waive any condition of an insurance policy.[3] In our view defendant successfully answers the question it thus poses, and we agree that Lange was in no position

3. Cates' policy also provided in Paragraph 19 of "Conditions":
"No notice to any agent or knowledge possessed by any agent or by any other person shall be held to effect a waiver or change in any part of this Policy nor estop the Company from asserting any

right under the terms of this Policy, nor shall the terms of this Policy be waived or changed, except by approved endorsement issued to form a part of this Policy, signed by the authorized Company Representative."

to waive Paragraph 5. However, this does not per se produce error on the part of the trial court in not directing a verdict in favor of defendant.

■ Even though the plaintiff pleaded waiver, in effect it was his position throughout the trial that Aviation Office of America modified the definition of "airport" which defendant now argues to mean, inter alia, "a landing area used regularly by aircraft for receiving or discharging passengers or cargo," "landing area" being defined as "any locality, either land or water, including airports and intermediate landing fields, which is used or is intended to be used, for the landing and take-off of aircraft, whether or not facilities are provided for the shelter, servicing, or repair of aircraft, or for the receiving or discharging of the passengers or cargo." The evidence adduced might well have been interpreted to show a modification of the contract by the insurance company, and the trial court did not err in refusing to direct a verdict in defendant's favor.

### Modification

■ Plaintiff next argues that the road Cates used for take-off was not straight, wide, and equivalent to a landing strip, that even Cates admitted to a "little curve in the road," and that there were some rough spots in the road with a few small chuckholes in it. While these were matters for the jury to weigh before reaching a verdict, there is no valid basis for defendant's contention that they warranted a directed verdict in its favor.

### Instruction 4

Defendant argues that the giving of the instruction regarding estoppel, whether or not it correctly stated the doctrine, was prejudicial to it and was sufficient ground for reversal, maintaining that since this doctrine was not pleaded plaintiff could not utilize it and that it influenced the jury to rely primarily on Cates' statement to the

effect that he thought he was covered. In addition defendant maintains that the instruction as given was incorrect since it did not contain a complete doctrine of equitable estoppel and "failed to include language to the effect before the doctrine could be applied, that one of the essential elements of waiver by, or estoppel of, an insurance company is its knowledge of the pertinent facts."

■ While under the Wyoming Rules of Civil Procedure estoppel is required to be pleaded as a defense, no such requirement is otherwise noted. Defendant did not object to Instruction 2 where the court stated to the jury, "the plaintiff claims that the language of * * * paragraph 5 was modified or that the defendant insurance company is *estopped* from relying upon said paragraph 5." (Emphasis supplied.) In any event, it is clear from the record that the issue of estoppel was tried by the implied consent of the parties. The cited case of McCarthy v. Union Pac. Ry. Co., 58 Wyo. 308, 131 P.2d 326, is not persuasive. It is true that the court there observed, 131 P.2d at 332, citing 19 Am. Jur. 844 and 31 C.J.S. Estoppel § 156, p. 449, that "an estoppel in pais must be strictly pleaded with precision and certainty." However, as stated in 31 C.J.S. Estoppel § 156(1), p. 760, "if the allegations amount to an estoppel it is sufficient, although the estoppel is not pleaded in so many words."

■ From our discussion of defendant's first point, it is obvious that waiver was pleaded by defendant. Waiver, as distinguished from estoppel, is the intentional relinquishment of a known right and must be manifested in some unequivocal manner;[4] but as observed in 28 Am.Jur.2d Estoppel and Waiver § 30, p. 635:

"* * * It is unquestionably true that the dividing line between waivers implied from conduct and estoppels oftentimes becomes so shadowy that in the law of insurance * * * the two terms have come to be quite commonly used in-

4. Waterway Terminals Company v. P. S. Lord Mechanical Contractors, 242 Or. 1, 406 P.2d 556, 567, 13 A.L.R.3d 1.

terchangeably. When the term 'waiver' is so used * * * the elements of an estoppel almost invariably appear, and it is quite apparent that it is employed to designate not a pure waiver, but one which has come into an existence of effectiveness through the application of the principles underlying estoppels. * * * "

There would appear to be no ground for reversal caused by the giving of Instruction 4.

### Instruction A

■ Defendant maintains the court erred in not giving its Instruction A:

" * * * the Defendant Ranger Insurance Company need not show a causal connection between an alleged breach of an exclusionary clause and the accident, if the terms of the policy are clear and unambiguous,"

arguing that the basic question in this case was whether or not the terrain used by the plaintiff at the time of the accident was the type of terrain contemplated by the policy under the exclusionary provision either as written or as modified and that the failure of the court to so instruct obviously allowed the jury to deliberate the question of proximate cause insofar as the terrain was concerned.

While the defendant accurately describes the basic question presented to the jury, it fails to show how absent Instruction A the matter of proximate cause was before the jury. We are unconvinced that error resulted in the court's refusal of this instruction.

### Testimony Regarding Landings

■ Defendant says that the only issue before the court was whether or not the portion of the road used by Cates came within the language of the policy, either as written or as modified, the question of safety in landing and taking off from such roads being entirely irrelevant and immaterial to the basic issue. It argues that the only reason plaintiff introduced evidence as to landings was to show the jury that

planes could *safely* land and take off from roads in the Red Desert basin, and that the effect of allowing such evidence was to bring the issue of proximate cause into the case. We cannot agree. The conversation between Lange and Aviation Office of America dealt with whether or not other planes used the hard-packed surface roads, and we see no error in the presentation of the questioned testimony.

### Gosney Testimony

■ In essence the foregoing issue is again argued, but it is also contended that plaintiff failed to lay a proper foundation in that the Gosney plane was of a different type than Cates', his plane having a 230 horsepower engine while Gosney's had a 150 and could land and take off in half the distance required for plaintiff's plane and that three men were in Cates' plane and only two in Gosney's. No authority is presented that "the type aircraft" referred to in Paragraph 5 would be so narrowly interpreted nor is there convincing argument that any prejudicial error occurred.

From an examination of the entire record, we find no prejudicial error in the trial court's application of the law; and there was substantial evidence upon which the jury could reach its verdict. Accordingly, the judgment must be affirmed.

Affirmed.

McINTYRE, Chief Justice (dissenting).

We seem to agree the plaintiff in this case cannot claim a waiver with respect to the exclusionary clause relied on by the insurance company in rejecting Cates' claim for payment. Of course, we must agree there was no waiver because the company expressly refused to waive the exclusionary clause when asked to do so.

If we agree there was no waiver, then there can be no basis for saying there was a modification of the exclusionary clause. That is simply another way of saying there was a waiver. In order to have a modification, you must first have a waiver of the written language followed by substi-

tuted language to take the place of the written language.

We all know enough about insurance to know, if the parties really thought the exclusionary clause was being modified, they would have had it expressed in writing— either by rewriting the exclusionary clause or by attaching a separate rider. Moreover, the policy provision set out in footnote 3 of Justice Parker's opinion expressly states the terms of the policy shall not be waived "or changed" except by approved endorsement issued to form a part of the policy and signed by an authorized company representative.

What happened is very clear from the circumstances. Cates wanted the insurance. He did not like paragraph 5 of the special provisions endorsement. He had a good college try at getting it waived or changed. The company refused. He had the agent try again with a telephone call and still no change was effected. Rather than be without insurance, he accepted the policy, apparently hoping there would be no accident under circumstances referred to in paragraph 5. This is borne out in the testimony of Dick Lange. According to Justice Parker's opinion, Lange testified Cates indicated he did not like the clause but, since Lange had written and also called, he (Cates) did not see any problem.

Perhaps it would be a bit anticlimactic to point out that no change in premium was made to compensate for added coverage which Cates claims the company assumed by its supposed modification.

In light of the explicit and clear language contained in paragraph 5 of the special provisions endorsement, I fail to see where plaintiff made out a prima facie case.

I would reverse the judgment.