John FUSS and Martha Fuss, Husband and Wife, and Myrtrice A. Baumgartner, Appellants (Plaintiffs below),

v.

William J. FRANKS, Appellee (Defendant below).

No. 5209.

Supreme Court of Wyoming.

April 25, 1980.

Rehearing Denied May 16, 1980.

Donald E. Jones of Donald E. Jones Law Offices, Torrington, for appellants.

Bob C. Sigler of Sigler & Pauli, Torrington, for appellee.

John D. Troughton, Atty. Gen. and Sandra K. Dunn, Asst. Atty. Gen., Cheyenne, filed brief of amicus curiae, and Sandra K. Dunn, Asst. Atty. Gen., Cheyenne, appeared in oral argument.

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

ROSE, Justice.

This case involves a dispute among landowners over the right to seepage or waste water first used upon the lands of the Bremers and appellants, Fusses and Baumgartner, and thereafter conveyed to other non-adjoining lands leased and farmed by Fusses. Appellee, Franks, interrupted this use by diverting the escaped water to his own property—thus the controversy.

The case was disposed of upon the court's judgment of dismissal. We will affirm in part, reverse in part, and remand.

John and Martha Fuss, husband and wife, and Myrtrice Baumgartner, appellants herein, together with Dale and Ralph Bremer, own and farm adjacent tracts of land in the Goshen County Irrigation District (hereafter G.I.D.). The land irrigates from south to north—that is, the water flows northerly from the three properties of Fusses, Baumgartner and Bremers toward the Franks land.

A secondary highway runs north and south to the east of these four tracts and borders the Baumgartner and Franks properties. Along the west side of the highway in the right-of-way is a borrow pit maintained by the State Highway Department. A ditch-rider road built by the G.I.D. intersects the highway, running east and west. This road separates the Franks land from the land owned and farmed by the appellants and the Bremers. A borrow pit originally ran alongside the ditch-rider road, but it has been converted into a waste-water-collection ditch. Waste water from the Bremer, Baumgartner and Fuss lands collects in this ditch and is carried into the highway borrow pit.

In addition to the aforementioned tract of land owned by the Fusses in Section 5, they also maintain farming operations to the north and east across the highway on state-lease land in Section 4.

Water for this entire area was acquired by the G.I.D. under various permits and the water rights within the District were then adjudicated in the names of individual landowners for individual 40-acre tracts. The water in contest here is seepage from water appropriated to tracts belonging to Bremers, Fusses and Baumgartner.

The present dispute arises out of the irrigation practices of the parties involved. The Fuss, Bremer and Baumgartner lands located in Section 5 have historically received water directly from the G.I.D. Canal, which bisects the three ownerships in that section. Excess water from these lands collects in the waste-water ditch which separates the Fusses, Bremers and Baumgartner from Franks in Section 5. The collected water flows easterly through this ditch into the highway borrow pit where it travels north some distance before it again flows east under the highway via an underground pipe constructed by the G.I.D. Appellants-Fusses have, for many years, irrigated their Section 4 state-lease land lying east of the highway with this escaped waste water which has crossed under the highway, as above described. William Franks has two pipes under the ditch-rider road from which he has collected some waste water for the irrigation of his property.

In 1977, Franks applied to the State Engineer's office for a permit for a supplemental supply of water, the source being the highway borrow pit. The application would allow Franks to construct a dam in the borrow pit in order that he might collect additional water for irrigation. The permit was approved by the State Engineer in July 1979.

Appellants brought the present action to prevent appellee from collecting this water and to stop further interference with the use of waste water on the appellants-Fusses' Section 4 leased land. An amended complaint was filed and was dismissed by order of the court on September 6, 1979.

We will address these following issues, which we find to be dispositive of all material questions raised by the appellants:

1. Whether the trial court erred when, by its order of dismissal, it held that the water from the highway borrow pit was lawfully appropriated by Franks under a valid permit;

2. Estoppel;

3. Adverse use; and

4. Injunction.

*Point 1: Was the water from the highway borrow pit lawfully appropriated by Franks?*

Whether or not Franks' appropriation was lawful is resolved by answering whether or not the State Engineer had authority to approve the Franks permit in July of 1979.

In this case, there was testimony that the seepage water in contest here would, if

uninterrupted, flow into a natural stream. This is a qualifying requirement for appropriation. *Binning v. Miller*, 55 Wyo. 451, 102 P.2d 54 (1940).

In *Binning* we said:

". . . And so it is held in a number of cases that seepage water which, if not intercepted, would naturally reach the stream, is just as much a part of the stream as the waters of any tributaries and must be permitted to return thereto, if the owner cannot make beneficial use thereof. *Rock Creek Ditch Co. v. Miller*, 93 Mont. 248, 17 P.2d 1074, and note thereto in 89 A.L.R. 218–227; 67 C.J. 1006, 1015. That would seem to be the more reasonable rule in irrigating states. . . ." 102 P.2d at 61.

This concept was reaffirmed in *Bower v. Big Horn Canal Association*, 77 Wyo. 80, 307 P.2d 593 (1957).

■ The permit having been issued to Franks, this constituted prima facie evidence of his right to take the water. *Hunziker v. Knowlton*, 78 Wyo. 241, 322 P.2d 141 (1958). This being so, it fell to appellants to allege facts sufficient to show that they had a right to the water superior to that of Franks, the permittee. *Binning*, supra.

Appellants say in their brief:

". . . The appropriator who captures upon his land waters not fully used for irrigation, sometimes referred to as waste water, may recapture the water for beneficial use *upon his premises for which the water had been appropriated*. . . ." (Emphasis supplied.)

That is a correct statement of law. It cannot, however, inure to the favor of appellants under the facts of this case.

We commented upon *Binning*, supra, where the facts were uniquely similar to those to be found here, when, in *Bower*, supra, we said:

". . . The real question in the case [*Binning*] was whether the prior appropriation of what was termed in the original application as 'waste and seepage water' was good as against the owner of the land *from which said water came*. The court held that the seepage water which formed a natural stream might be appropriated, subject to the right of the land owner to use the water for beneficial purposes *upon the land for which the water forming the seepage was originally appropriated*." (Emphasis and bracketed matter supplied.) 307 P.2d at 600.

■ This language means that the owner of land upon which seepage or waste water rises has the right to use and reuse—capture and recapture—such waste waters for use only "upon the land for which the water forming the seepage was originally appropriated." When the water leaves the land for which it was appropriated and would, if left to flow uninterrupted, reach a natural stream, it becomes eligible to other and separate appropriation for other and different uses. It leaves the landowner upon which the seepage rose, and from which it has escaped, without any superior right to such water by reason of its having been utilized upon the land to which it was first appropriated.

■ We recognized this concept in *Bower*, supra, when we said:

". . . Additionally, it is equitable, in accordance with the constitutional provisions of this State, and in line with our previous holdings, that we here decree seepage water arising on Bower's land to be subject *to appropriation* by him (subject to prescribed procedures) for lands *other than those upon which the seepage arises*. . . ." (Emphasis supplied.) 307 P.2d at 602.

The "prescribed procedures" referred to are the application requirements for a water permit under the statutes. The rationale for this rule finds its genesis in the doctrine long since established in this state to the effect that waters become appurtenant to the lands for which they are acquired and, unless the statutes are followed with respect to change of use, the waters cannot be detached and assigned to other land without the loss of priority. *Scherck v. Nichols*, 55 Wyo. 4, 95 P.2d 74 (1939).

■ The water which accumulates in the collection ditch separating the Franks land from Bremers, Fusses and Baumgartner in Section 5, and which thereafter runs into the highway right-of-way originates on the land of the last three mentioned owners and is adjudicated in the name of the individual landowners for use upon their particular land tracts. This fact statement is undisputed. Therefore, once the water escapes the aforementioned Bremers, Fusses and Baumgartner lands in Section 5 and finds its way to the collection ditch and thence to the highway right-of-way, it must be regarded as having escaped the land to which it is appropriated and, since it would, if undisturbed, have flowed to a natural stream, it, therefore, becomes eligible for other appropriation. *Binning*, supra; and *Bower*, supra.

Franks' permit was valid because the Fusses, Bremers and Baumgartner had no superior right to the water after it left their properties to accumulate in the collection ditch and from there flow to the highway right-of-way borrow pit.

*Point 2: Estoppel.*

■ In this appeal, the appellants urge a concept of estoppel. We will not detail it further because it was not pleaded.

We held in *Ranger Insurance Company v. Cates*, Wyo., 501 P.2d 1255, 1259 (1972), that estoppel must be pleaded (Rule 8(c), W.R.C.P.) with precision and certainty, provided, however, that the defense may be relied upon even though not pleaded in so many words where the allegations amount to an estoppel.

There was no pleading of estoppel, nor were there allegations amounting to estoppel in this case. We will, therefore, not consider the point.

*Point 3: Adverse use.*

■ Appellants argue that they have used the conveyance ditch for ten years and have acquired an adverse right. We assume that means an adverse possessory right at least as against the appellee. The ditch where the appellee has his dam is on the highway right-of-way.

We have not been cited authority as to how the appellants go about acquiring ownership by adverse use of the ditch from the State of Wyoming. Since there is no such cited authority, we will not consider the question. *Salmeri v. Salmeri*, Wyo., 554 P.2d 1244, 1252 (1976).

Furthermore, the issue of adverse use of either ditch or water was not presented to the trial court and we will, therefore, not consider the issue here. *Scherling v. Kilgore*, Wyo., 599 P.2d 1352, 1358 (1979).

We consider these points to be all that is necessary to the determination of the validity of the permit.

*Point 4: Injunction.*

This matter was disposed of by the court entering a judgment of dismissal, finding that the amended complaint failed to state a claim upon which relief can be granted under Rule 12(b)(6), W.R.C.P.

In the amended complaint, the appellants allege that by reason of the fact that the appellee had dammed the ditch,

". . . flooding will occur upon the property of the plaintiffs and damage to the crops and lands owned by the plaintiffs, particularly in the event of rains or floods in the drainage area collected by the conveyance ditch, or if the dam breaks or is opened, flooding and disruption has and will occur. . . ."

The appellants plead irreparable damages and ask for injunctive relief.

The judgment of dismissal has the effect of finding that the appellants failed to state a claim against the defendant when they urged damage to their property by reason of the purported danger of flooding.

We cannot agree.

■ We have said that if the undisputed facts appearing in the pleadings, supplemented by any facts of which the trial court will take judicial notice, establish that no relief can be granted, the movant is entitled to judgment on the pleadings. *Bon v. Lemp*, Wyo., 444 P.2d 333, 335 (1968). In this instance, the appellants have pleaded

for injunctive relief in a manner which shows that, if true, relief should be granted. The appellants were entitled to present evidence on this issue only.

There being no other issues for decision, the judgment of the trial court is affirmed on all points except the issue having to do with injunctive relief for flood danger. As to that issue only, the matter is remanded for such further hearing and relief as is not inconsistent with this opinion.

Affirmed in part, reversed in part, and remanded.

McCLINTOCK, J., filed a specially concurring opinion.

McCLINTOCK, Justice, specially concurring.

Insofar as the court reverses the refusal of the district court to consider the injunction phase of plaintiffs' complaint, I concur without reservation. While I am in similar agreement as to the dismissal of plaintiffs' first claim seeking to enjoin interference with plaintiffs' asserted rights in the water which had seeped from his lands and those of his neighbors, I cannot agree that defendant has established a valid water right therein. Notwithstanding the decision of this court in *Bower v. Big Horn Canal Association*, 77 Wyo. 80, 307 P.2d 593 (1957), I think that there can be no permit legally issued by the state engineer's office to appropriate seepage and waste waters. I believe that that question was settled in *Binning v. Miller*, 55 Wyo. 451, 102 P.2d 54 (1940) and that Bower places an improper interpretation upon the earlier case. Insofar as Bower stands as authority for the claim that defendant had a legal permit, which could lead to the establishment of an adjudicated water right, I would declare that it is not the law of this state.

It is said in *Binning*:

" . . . [S]eepage water which, if not intercepted, would naturally reach the stream, is just as much a part of the stream as the waters of any tributaries and must be permitted to return thereto, if the owner cannot make beneficial use thereof." 55 Wyo. at 471, 102 P.2d at 61.

But it is also clear from that opinion that this court took the view that seepage and waste waters, in all respects similar to those involved in the case at bar, are not "public waters," and therefore no one "has the right to file for the same excepting the owner of the land." 55 Wyo. at 468, 102 P.2d at 60, quoting from *Skinner v. Silver*, 158 Ore. 81, 75 P.2d 21, 28. This opinion also quotes with approval this very pertinent passage from *Hagerman v. Drainage District*, 25 N.Mex. 649, 187 P. 555, 558 (1920):

" '[F]rom the authorities cited it will be seen that only natural waters flowing in stream and watercourses are subject to appropriation; that the creator of an artificial flow of water is the owner of the water *so long as it is confined to his property*, but that when such artificial waters are deposited in a natural stream and the creator of the flow has lost his dominion over the same, such waters become a part of the waters of the stream, and are subject to appropriation and use, *but it is only after such waters reach the stream that they are subject to appropriation and use.*' " (Emphasis added.) 55 Wyo. at 468, 102 P.2d at 60.

While *Binning* recognized that from and after 1936 there was a valid water appropriation from what had originally been nothing but a collection of seepage and waste water, this court clearly refused to recognize the right as having priority as of 1906, the year in which the present owner's predecessor in interest had applied for and received a permit. Recognition of the right as of a later date was based on the finding of the court that between 1906 and 1936 "[t]he continued seepage from Binning's lands seem[ed] during the course of years to have finally made a regular, natural stream of water near the Glover land." 102 P.2d at 63.

Notwithstanding the lack of a valid water right in the defendant, I would sustain the holding of the trial court on this phase of the case on the basis of the rule also announced in *Binning*, 55 Wyo. at 474, 102 P.2d at 62, that

"A rule runs throughout the law that he who sues for damages or for interference must show that a legal right has been invaded."

Plaintiffs have not brought themselves within the rule of recapture because they have not shown that they have recaptured the water before it escaped from the lands for which it had originally been acquired and to which it had been adjudicated, within the rule of *United States v. Ide*, 8 Cir., 277 F. 373 (1921), aff'd, *Ide v. United States*, 263 U.S. 497, 44 S.Ct. 182, 68 L.Ed. 407 (1921). Similarly to the defendant, they can claim no valid appropriation of the water.